# A. W. Chesterton Company *vs.* Commissioner of Revenue.

No. 95-P-2139.

Suffolk. May 4, 1998. - November 12, 1998.

Present: Kass, Gillerman, & Lenk, JJ.

*Taxation,* Corporate excise, Abatement. *Administrative Law,* Substantial evidence.

A determination of the Appellate Tax Board that the Commissioner of Revenue had assessed a tax within the three-year limitations period set forth in G. L. c. 62C, § 26(*b*), was not supported by substantial evidence. [710-714]

Appeal from a decision of the Appellate Tax Board.

*Earle C. Cooley* for the plaintiff.

*Gregory S. Gilman,* Assistant Attorney General, for the defendant.

Lenk, J. A. W. Chesterton Company (Chesterton) appeals from a decision of the Appellate Tax Board (board) favorable to the Commissioner of Revenue (commissioner). The board upheld the commissioner's denial of Chesterton's application to abate its corporate excise tax for the 1982 tax year. Chesterton's abatement application was based, in relevant part, on its contention that the commissioner had not timely assessed the tax and that the limitations period of G. L. c. 62C, § 26, accordingly barred the deficiency assessment.

All agree that, to be timely, the assessment had to have been made by the commissioner no later than December 31, 1985. It is also agreed that the notice of assessment (NOA) sent to Chesterton by the commissioner bore the date of January 10, 1986, ten days past the deadline. The NOA did not indicate the date on which the actual assessment, an act entirely internal to the Department of Revenue (department), took place. The nub of the dispute on appeal is the board's determination that, notwithstanding the date on the NOA, the assessment had actu-

ally been made no later than December 27, 1985, and, as such, was timely. Chesterton maintains that, absent contemporaneous departmental tax records, firsthand knowledge, or other reliable evidence concerning the act of assessment, the date of the NOA is controlling and the board's decision to the contrary is not supported by substantial evidence. We reverse.

1. *Background.* This dispute arises in the context of a lengthy history of controversy between Chesterton and the commissioner concerning the department's unitary assessment practice, see, e.g., *A. W. Chesterton Co.* v. *Commissioner of Rev.*, 37 Mass. App. Ct. 936 (1994), and, in the wake of *Polaroid Corp.* v. *Commissioner of Rev.*, 393 Mass. 490 (1984), the appropriate method for apportionment of income. Initially, in October, 1983, the commissioner, pursuant to G. L. c. 62C, § 26(*b*),[1] issued a notice of intention to assess (NIA) an additional tax for the 1982 tax year in the amount of $347,482. This NIA was later withdrawn. Almost two years later, in March of 1985, the commissioner issued a second NIA in the lesser amount of $162,859. Presumably to facilitate the communication process between the taxpayer and the department envisioned by G. L. c. 62C, § 26(*b*), in the period of time following receipt of a NIA, Chesterton consented, on June 26, 1985, to extend until December 31, 1985, the time within which the commissioner could assess an additional corporate excise tax for the 1982 tax year. On December 20, 1985, without having yet received a NOA from

---

[1]General Laws c. 62C, § 26(*b*), as amended by St. 1985, c. 593, § 15, provides in pertinent part that: "If the commissioner determines, from the verification of a return or otherwise, that the full amount of any tax has not been assessed or is not deemed to be assessed, he may, at any time within three years after the date the return was filed or the date it was required to be filed, whichever occurs later, assess the same with interest as provided in section thirty-two to the date when the deficiency assessment is required to be paid, first giving notice of his intention to the person to be assessed. Such person or his representative may confer with the commissioner or his duly authorized representative as to the proposed assessment within thirty days after the date of such notification. After the expiration of thirty days from the date of such notification, the commissioner shall assess the amount of tax remaining due the commonwealth, or any portion thereof, which he believes has not therefore been assessed.

Failure to receive the notice provided for by this paragraph shall not affect the validity of the tax."

the commissioner pursuant to G. L. c. 62C, § 31,[2] Chesterton hand-delivered a check in the amount of $240,800.07 to the department. On January 10, 1986, the commissioner sent Chesterton a NOA reflecting an "excise before credits" of $162,859 and "interest" of $108,636, together resulting in a "total excise" of $271,495, as well as "total payments" of $240,800.07, and a "balance due" of $30,694.93. Chesterton paid the "balance due" on February 7, 1986, and thereafter timely filed an application for abatement based in pertinent part upon its contention that the assessment was untimely because not made on or before December 31, 1985. The commissioner denied the abatement application on August 16, 1989, without comment on the issue of the timeliness of the assessment. Chesterton appealed to the board from the commissioner's refusal to abate the tax.[3]

The board[4] conducted an evidentiary hearing on August 13, 1992. Three years later, on October 16, 1995, the board[5] issued its decision affirming the commissioner and, one year later, on

---

[2]General Laws c. 62C, § 31, inserted by St. 1976, c. 415, § 22, provides that: "If the assessment of any tax is in excess of the amount shown on the return as the tax due, the commissioner shall, as soon as may be, give written notice to the taxpayer of the amount of the assessment, the amount of any balance due and the time when the same is required to be paid. Failure to receive such notice shall not affect the validity of the tax."

[3]In his first answer to Chesterton's petition to the board, the commissioner admitted that the assessment of additional tax and interest was made by a NOA dated January 10, 1986. In his amended answer filed three years later and apparently prompted by Chesterton's motion for summary judgment, the commissioner changed his position, asserting instead that the January 10, 1986, NOA did not state the date of assessment and that he had assessed, i.e., had "entered an assessment upon an instruction to bill corporate excise tax in the amount of $162,859.00 plus statutory additions" on or before December 27, 1985. The board subsequently denied Chesterton's summary judgment motion in view of the disputed issue of material fact raised by the commissioner in the affidavit of his employee, Edward Lepore. Lepore stated that, from examining the department's computer records and a copy of the March 25, 1985, NIA, "I am able to state with certainty that the assessment in this matter was made, i.e., entered upon the Department's instruction to bill, at some point from April 25, 1985 through December 27, 1985. . . . Until I obtain the original NIA, the back of which should include the dated instruction to bill, it will not be possible to ascertain the exact assessment date."

[4]The only board member present appears to have been Chairman Timothy O'Brien.

[5]The decision was signed by Chairman O'Brien and Commissioners Wall and Scharaffa.

October 24, 1996, the board[6] issued its findings of fact, report, and opinion.

2. *The evidence.* At the evidentiary hearing, the board heard from three witnesses, two. for Chesterton and one for the commissioner, and received in evidence five exhibits. We recite this evidence and the board's findings in some detail because our review as to whether substantial evidence supports the board's conclusion must be of the entire record.

(a) *Chesterton's evidence.* Chesterton's controller, Gary Hutchins, was responsible for preparing its tax returns and had knowledge of the company's State audit history and the controversy stemming from the unitary tax method of income allocation affecting tax years 1977 through 1982. He testified that the controversy as to tax year 1982 had not been resolved by the end of 1985 and that, while Chesterton had received a NIA for tax year 1982 in March of 1985, it had not received a NOA before the end of 1985. Nonetheless, in anticipation of the assessment being made and in order to avoid further accumulation of eighteen per cent interest and to take a deduction on its Federal income tax return for tax year 1985, Chesterton paid the contested State tax liability for tax year 1982 on December 20, 1985. Chesterton thereafter received the NOA dated January 10, 1986, having received no other notice, oral or written, that an assessment had been made prior to the end of 1985.

John Riley, Chesterton's vice-president of finance, also testified. Riley was deeply involved in the State tax audits for tax years 1977 through 1982 and testified that, as of December 20, 1985, when Chesterton paid the contested tax liability for tax year 1982, the audits for tax years 1977 through 1982 were actively in dispute. He and Hutchins were in regular contact and exchanged information with the department following receipt of the NIAs for those tax years. Indeed, the commissioner stipulated that the controversy as to tax year 1982 was an ongoing matter from 1983 until the date of assessment. Riley testified that on January 28, 1986, he had a telephone conversation with Jeremiah Donovan, a department auditor who had been involved in the case, to determine the date on which the department had assessed Chesterton for the 1982 tax year. Dono-

---

[6]The findings, report, and opinion were signed by then Chairman Kenneth W. Gurge, who does not appear to have earlier participated in the proceedings or signed the October 16, 1985, decision. The parties do not address whether this has significance.

van informed him that the assessment had been entered on the department's computer on January 22, 1986. A contemporaneous memorandum of this conversation was admitted in evidence.

(b) *The commissioner's evidence.* The only witness called by the commissioner was Edward Lepore. Lepore had not had any involvement at all with the deficiency assessment at issue and consequently could not testify as to his recollection of events relating to the assessment for tax year 1982. Nor was Lepore called to meet foundational requirements for the introduction of original departmental records with respect to that assessment, such as the original notice of intent to assess, instruction to bill, memorandum, worksheets, audit assessment or audit file, for Lepore testified that all such internal documents had been destroyed under circumstances which he could not explain. Instead, Lepore was called because, at the time of the hearing, he was assistant chief of the department's Masstax Bureau which monitors Masstax and its computer system, and could opine as to the meaning of an archived computer printout relied upon by the commissioner to show that timely assessment had been made.

Lepore testified that the Masstax computer system did not come into use until 1988, well after the time of the assessment at issue here. At all relevant times before that, the so-called DSBO1 computer system was in use, a system significantly different in structure and format from Masstax. Lepore knew the DSBO1 system solely from a user's point of view and had never worked in the bureau having responsibility for it. Lepore testified that the department's only computer records regarding the Chesterton deficiency assessment for the 1982 tax year are maintained, following the conversion from DSBOI to Masstax in 1988, on an archived computer file denominated DSBO3, and that the data from DSBO1 on Chesterton for that period was never converted to Masstax.

The document, Exhibit A, which Lepore was called to interpret was a DSBO3 printout of the department's archived corporate excise tax file for Chesterton. Lepore testified that the document does not itself represent the assessment. The archived Chesterton file was created as a compilation of data in 1988, and Lepore had nothing to do with its creation. He did not enter any data and has no knowledge as to the accuracy or completeness of the information entered. Lepore testified as to the meaning of the following portion of Exhibit A, based on his memory

and experience in the department:

| *Period* | *Validation #* | *Amt. Tax* | *Int.* | *Amt. Pd.* | *Balance* |
|---|---|---|---|---|---|
| A Jan. 82 | 5361.71.700100 | 240800.07 | | 240800.07 | .00 |
| A 01/22/86 | Assessor Entry | 77941.07 | | .00 | 77941.07 |
| A 01/22/86 | 6004.74.100209 | Bill 091810 | 108636.00 | .00 | 30694.93 |
| A 02/24/86 | 6055.74.000103 | Payment | | 30694.93 | .00" |

It is the first of the above four lines that the commissioner relies upon to prove that the assessment was timely made. While none of the coded information specifically refers to an assessment or instruction to bill, Lepore testified that the line means to him that an instruction to bill constituting the assessment, which would have followed an earlier NIA, was entered on the computer system on December 27, 1985. More specifically, Lepore testified that: "A" means audit assessment; "Jan. 82" refers to the tax year in question; "5361" of the validation number is the Julian calendar equivalent of the 361st day of 1985 or December 27, 1985, and is the day on which the data was entered; "71" of the validation number is the code for audit assessment, i.e., the assessment of tax based upon an instruction to bill signed by an audit supervisor; "700100" merely refers to the location of the document in the records management bureau; and "$240,800.07" is the amount paid on the assessment.

Lepore testified that it was "standard practice" in the department for the instruction to bill, which follows an NIA thirty days or so later and which constitutes the assessment, to be sent to the data integration bureau and, within a day or so, entered into the computer system. It was also "standard procedure" not to post the tax amount separately (here $162,859) but to post the total dollar amount related to the transaction. Lepore testified that the presence of "71" made it clear to him that the $240,800.07 was not a prepayment, i.e., a payment made pursuant to the NIA and before the actual assessment or NOA, because "71" denotes an instruction to bill, indicates that an assessment had in fact been made, and, accordingly, would not have been the code for a prepayment.

Lepore, however, also testified that he does not know how the system would have recorded a payment made pursuant to an NIA in anticipation of and before an actual assessment or NOA, and does not think there was a way of doing so. He had never

encountered such a situation himself. Indeed, after he produced an index of computer codes used by the department in the relevant period,[7] he testified that there was nothing listed on that index which relates to such a prepayment, although he was certain that any payment received would be recorded in some manner.

As to the remaining three lines of entry on Exhibit A, Lepore testified that he did not know the follow-up procedures used by the data integration bureau after the instruction to bill occurred and could not explain the twenty-six day differential between the December 27, 1985, entry and the two January 22, 1986, entries or determine who had caused the latter two entries to be made. He indicated that after someone determined what portion of the $240,800.07 was interest ($77,941.07), the bureau apparently posted the correct total interest ($108,636.00) and billed the remaining interest ($30,694.93). Nor could Lepore explain why the NOA reflecting a balance due of $30,694.93 was dated January 10, 1986, when the entries on Exhibit A do not reflect this amount until January 22, 1986.

3. *The board's findings.* In pertinent part, the board found that "[o]n the basis of the computer printout and Mr. Lepore's testimony . . . as of December 27, 1985, the Commissioner had determined and recorded the amount of tax due from Chesterton on its computer system." The board found Lepore's testimony interpreting Exhibit A to be credible. The board's entire discussion of that testimony is limited to the first line of Exhibit A and is as follows: "The 'A' stands for 'additional assessment.' The '71' represents an audit assessment resulting from an instruction to bill. Furthermore, the '5361' is the Julian date for the 361st day of 1985, December 27, 1985, the date the assessment was posted to the account. Also included on this line is a credit entry of $240,800.07, representing the payment made by Chesterton on December 20, 1985. As a result of the credit entry, the account bears a zero balance."

4. *Discussion.* It is well established that "[a] decision of the board will not be reversed or modified if it is based on a correct application of the law and if it is based on substantial evidence."

---

[7]The computer code index, also admitted in evidence, reflected, in contrast with Lepore's initial testimony, that "71" refers to a variety of listings for domestic returns and that, under the "71" category, the "batch number" for "355A-NIA" is 7000. "NIA" in "355A-NIA" refers to the notice of intention to assess.

*Kennametal, Inc.* v. *Commissioner of Rev.*, 426 Mass. 39, 43 (1997), cert. denied, 118 S. Ct. 1386 (1998). While the board's decision is final as to findings of fact, we may "consider whether, as a matter of law, the board's factual findings are supported by substantial evidence." *Towle* v. *Commissioner of Rev.*, 397 Mass. 599, 601-602 (1986). The substantial evidence standard is "not susceptible of a simple definition. [It has] frequently [been] stated that substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.' Under this standard we are required to decide 'whether experience permits the reasoning mind to make the finding; [i.e.,] whether the finding *could* have been made by reference to the logic of experience.' A finding of the board must be set aside if 'the evidence points to no felt or appreciable probability of the conclusion or points to an overwhelming probability of the contrary.' Significantly, we are not required to affirm the board merely on a finding that the record contains evidence from which a rational mind might draw the desired inference. Our determination must be made 'upon consideration of the entire record.' 'The substantiality of evidence must take into account whatever in the record fairly detracts from its weight.' " *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 466 (1981) (citations omitted). *Tennessee Gas Pipeline Co.* v. *Assessors of Agawam*, 428 Mass. 261, 262 (1998). See *Hotchkiss* v. *State Racing Commn.*, *ante* 684, 696 (1998).

It is also well established that "[t]he taxpayer has the burden of proving as a matter of law its right to an abatement of the tax." *M & T Charters, Inc.* v. *Commissioner of Rev.*, 404 Mass. 137, 140 (1989). Here, Chesterton based its claim of right upon the Commissioner's failure to assess timely the deficiency assessment for tax year 1982.

The parties do not challenge the board's construction of what constitutes a deficiency assessment under G. L. c. 62C, § 26(*b*), i.e., the act by which the commissioner determines or verifies and records the amount of tax due.[8] Nor do they disagree about the board's construction of G. L. c. 62C, § 31, regarding the

---

[8]Although not in effect at the time in question, in 1989 the Department of Revenue promulgated a regulation that specifies that the date of a deficiency assessment is the date on which the commissioner's designee enters the amount of assessment upon an internal document called an instruction to bill. See 830 Code Mass. Regs. § 62C.26.1(6)(f) (1993).

requirement that a NOA be given "as soon as may be" following the actual assessment. They do not challenge the board's view in this regard that the date of the NOA is not the equivalent of the date of assessment but that, in the absence of reliable evidence indicating an earlier assessment date, the date of the NOA will be treated as the assessment date.[9] The board is an agency charged with the administration of tax law to whose interpretation of tax statutes we may give weight. *Commissioner of Rev.* v. *McGraw-Hill, Inc.*, 383 Mass. 397, 401 (1981).

The issue before us then is whether there was sufficient evidence to support the board's finding that the actual assessment was made earlier than the January 10, 1986, NOA, i.e., as of December 27, 1985, a finding that expressly rests upon only a portion of Lepore's testimony and the first line of Exhibit A. We conclude, based on our consideration of the entire record, including that which fairly detracts from the evidence on which the board relied, that that evidence was not substantial and is not adequate to support the board's conclusion.

It is well to begin by recalling what evidence was not before

---

[9] The board has repeatedly addressed the issue whether an assessment is timely and has accepted that the date of the NOA, absent reliable evidence of an earlier actual assessment, controls. The board has been quite consistent as to what it considers reliable evidence of an earlier assessment. In *Kent* v. *State Tax Commn.*, 1 Mass. Tax Cases par. 200-147 (CCH Mass. Tax Rep. 1962) a report of investigation signed by the examiner and the computation sheet together evidenced the actual assessment. In *Menard* v. *Commissioner of Rev.*, 12 Mass. App. Tax Bd. Rep. 174, 179 (1990), testimony from the tax examiner who recalculated the amount of tax due and placed the figure on a request to bill carried the day. Similarly, in *Tambrands, Inc.* v. *Commissioner of Rev.*, 19 Mass. App. Tax Bd. Rep. 135 (1996), the signed instruction to bill, two transmittal memos, notices of assessment showing an earlier actual assessment date and the testimony of two department witnesses constituted reliable evidence of an earlier assessment. Conversely, no reliable evidence was found of an earlier assessment date, in *Jewel Cos., Inc.* v. *Commissioner of Rev.*, 12 Mass. App. Tax Bd. Rep. 101, 110 (1990), where there was no testimony from any witness with specific knowledge or memory of the additional assessment and where no assessing documents such as a worksheet, computation sheet, or NOA bearing the date of the actual assessment were introduced. The principal document relied on by the commissioner, a warrant, exhibited certain inconsistencies impeaching its reliability and the department's testimony concerning standard assessment practices and procedures on cross-examination evinced departures both general and specific to that case. There was also no reliable evidence of an earlier assessment date in *Wolf* v. *Commissioner of Rev.*, 2 Mass. App. Tax Bd. Rep. 164, 165 (1983), and *Ricciardi* v. *Commissioner of Rev.*, 9 Mass. App. Tax Bd. Rep. 91, 94 (1987), and the date of the NOA controlled.

the board. First, all original contemporaneous departmental documents, including the March 25, 1985, NIA and the instruction to bill, had been destroyed. No explanation was offered by the commissioner for the destruction of plainly critical documents during the pendency of this dispute. Second, no departmental employee who had participated in the audit or assessment process for Chesterton's 1982 tax year testified. Hence, the board did not have the benefit of any department witness with firsthand knowledge of the events in question, all of which had occurred deep within the internal workings of the department. Third, the only document on which the commissioner relied, Exhibit A, was an archived compilation of data created in 1988, well after the events in question. That document was hardly self-explanatory, made no explicit reference to either an assessment, an assessment date, or an instruction to bill, and admitted of several conflicting interpretations, a point to which we shall shortly return.

Lepore's testimony was limited to his opinion of the meaning of Exhibit A, based upon his experience with and memory of the department's standard procedures and the codes employed in an obsolete computer system he had learned through its use years before. That testimony was both internally inconsistent in certain important respects and quite limited in its explanatory power. Reduced to essentials, Lepore opined that the coded terms in the first line of Exhibit A together mean that, on December 27, 1985, an instruction to bill, i.e., an assessment in the amount of $240,800.07, was entered on the computer system and marked paid. The meaning of the code "71" as instruction to bill or audit assessment was crucial to this reading, but the computer code index introduced in evidence which Lepore himself produced and to which Lepore referred in his testimony, does not corroborate his memory. Instead, the index at best suggests that "71" with "355A-NIA" and "7000" refer to the NIA for a domestic corporation. Both documents, then, are silent as to the key terms, "instruction to bill" and "assessment."

Lepore's testimony attempts to bridge this gap by reference to standard departmental procedures as he remembered them, i.e., an instruction to bill ordinarily followed upon an NIA after thirty days and consequently must have happened here. This, of course, was the very point needing proof and Lepore, who had neither been involved with the audit and assessment process generally nor participated in the Chesterton assessment for the

1982 tax year, could not provide it. No one who participated in that audit and assessment process testified and, hence, there was no evidence that the "standard procedures" Lepore remembered had in fact been applied to Chesterton. The critical gap remained unbridged. In this regard, moreover, Lepore did not explain why an instruction to bill would occur about December 27, 1985, when the NIA was dated March 25, 1985, almost 270 days earlier, and "standard procedure" would have had the instruction to bill occur at the end of April rather than the end of December.

Lepore was also largely unable to explain the second through fourth lines of Exhibit A. He said he was unfamiliar with departmental procedures following an instruction to bill and was unable to explain why twenty-six days had elapsed between the December 27, 1985, entry and the two subsequent entries dated January 22, 1986, which together fix the correct amount the department claimed to be due, i.e., $271,495 less the $240,800.07 already paid. Further along these lines, we note Lepore's testimony that it was standard procedure not to post separately the tax and interest amounts when entering the instruction to bill data on the computer system. Since the tax amount is a constant, this suggests that if the December 27, 1985, entry were indeed reflective of data on an instruction to bill, the amount posted logically would have been the amount in fact then due, i.e., $271,495.00. Instead, the December 27, 1985, entry is for $240,800.07, a figure identical to the amount of Chesterton's check tendered on December 20, 1985. Of equal note is the resulting credit balance of $0.00 entered on December 27, 1985, rather than what was in fact claimed to be due by the commissioner, i.e., $30,694.93 and posted on January 22, 1986. Lepore was also unable to explain why the NOA bore a date of January 10, 1986, when the entries on Exhibit A show no activity between December 27 and January 22.

Lepore was similarly unable to explain how the former computer system would accommodate a prepayment in anticipation of an assessment, i.e., a payment made in response to an NIA, before an assessment is actually made or a NOA is received. This is of note in view of Chesterton's unrebutted testimony that it did precisely that on December 20, 1985, with its $240,800.07 payment. Given the commissioner's own regulations on the subject specifically permitting payment in anticipation of an assessment following receipt of an NIA, 830 Code

Mass. Regs. § 62C.26.1(6)(e) (1993), it can hardly be the case, notwithstanding Lepore's apparent unfamiliarity with such a prepayment practice, that a payment pursuant to an NIA and in anticipation of an assessment is by any means an anomaly. See Massachusetts Taxation and DOR Practice: A Guide to Collections, Audits, Abatements and Appeals § 4.17 (Mass. Continuing Legal Educ., Scharaffa ed. 1996). Compare *Tambrands, Inc.* v. *Commissioner of Rev.*, 19 Mass. App. Tax Bd. Rep. 135, 138-139 (1996).

The board's truncated analysis of the evidence did not take into account the severely constrained limits of and considerable shortcomings in Lepore's testimony nor the several interpretations possible of Exhibit A which cannot stand entirely on its own legs. In this regard, the board entirely ignores, without explanation, Chesterton's unrebutted evidence giving rise to an alternative and plausible construction of all four lines of Exhibit A. The unrebutted evidence is that Chesterton had received an NIA for tax year 1982 dated March 25, 1985, and contested it throughout 1985, making a $240,800.07 payment before year's end pursuant to the NIA in order to curtail the running of interest and to take a tax deduction. The first notice Chesterton had that an assessment had been made was the January 10, 1986, NOA, followed by a bill for unpaid interest of $30,694.93, both of which Chesterton received well after making the payment of $240,800.07 on December 20, 1985. The department's auditor later informed Chesterton that the assessment had been entered in the department's computer on January 22, 1986. The index of computer codes had no way to account for a prepayment made against a NIA before receipt of a NOA, as Chesterton claims happened here. Given this evidence, what Exhibit A could also mean is that the system created a liability on December 27, 1985, and applied the payment to that liability, resulting in a zero balance. Since the $240,800.07 payment was not in fact the correct amount due, when the assessor calculated and recorded the correct amount of tax and interest in January, computer entries reflecting these amounts were made on January 22, 1986.

We conclude that Chesterton came forth with prima facie evidence to meet its burden of proving a right to an abatement. The board's own interpretation of G. L. c. 62C, § 31, calls for the date of the NOA to be treated as the assessment date absent reliable evidence of an earlier assessment date. By virtue of (a)

the January 10, 1986, NOA which did not reflect an earlier actual assessment date, (b) the absence, through departmental destruction, of contemporaneous tax records such as the instruction to bill reflecting an earlier actual assessment date, (c) the testimony of Chesterton witnesses, and (d) a contemporaneous file memorandum documenting a telephone conversation with the auditor who established (consistent with Exhibit A) January 22, 1986, as the date the assessment was entered on the computer, Chesterton met its burden.

It was incumbent upon the commissioner to come forward with reliable evidence of an earlier actual assessment date.[10] Neither Exhibit A alone nor together with Lepore's testimony can suffice. Lepore's opinion testimony, however believable a witness he may have been, did not have adequate rational support. It did not have sufficient basis in the necessary facts to be of substantial probative force. More than Lepore's opinion as to the meaning of codes, supplemented by his memory of certain standard departmental procedures, was needed. Either contemporaneous tax documents, testimony from a witness with firsthand knowledge of the Chesterton assessment or, at a minimum, testimony from a witness with knowledge of the department's relevant standard procedures and the uniform application of such procedures to all similarly situated taxpayers at the time was required. A review of the entire record compels the conclusion that, if the "substantial evidence" standard is to have meaning, the evidence on which the board relied in finding that an actual assessment had been made as of December 27, 1985, cannot be considered substantial. The decision of the board is reversed.

*So ordered.*

---

[10]Compare *Waban, Inc.* v. *Commissioner of Rev.*, No. F217518, Mass. App. Tax Bd. (May 28, 1997).