TAMBRANDS, INC. *vs.* COMMISSIONER OF REVENUE.

No. 96-P-1954.

Suffolk. February 4, 1998. - March 24, 1999.

Present: KASS, SMITH, & FLANNERY, JJ.[1]

*Taxation,* Corporate excise, Appellate Tax Board: findings. *Notice,* Timeliness. *Statute,* Construction. *Administrative Law,* Findings, Substantial evidence.

The Commissioner of Revenue gave notice of a deficiency tax assessment "as soon as may be," in the language of G. L. c. 62C, § 31, and the taxes were not invalid, in circumstances in which, by reason of a computer information system breakdown necessitating hand processing of a large number of tax records by a limited workforce, the assessment was sent as soon as *could* be, some fifteen to eighteen months after the tax had been determined by the Department of Revenue, and where the taxpayer, in any event, was not prejudiced. [525-527]

APPEAL from a decision of the Appellate Tax Board.

*Kathleen King Parker* for the plaintiff.

*Donald J. Evans,* Special Assistant Attorney General, & *Philip S. Olsen,* for the defendant, submitted a brief.

KASS, J. Tambrands, Inc. (Tambrands), the taxpayer, claims it is entitled to an abatement of all of a deficiency tax assessment because the Commissioner of Revenue (commissioner) failed to give it a timely written notice of assessment as required by G. L. c. 62C, § 31. We decide, as did the Appellate Tax Board (board), that, in the circumstances, the commissioner gave a timely notice of assessment.

That the commissioner furnished the taxpayer with a notice of assessment is not in dispute. The question is whether the commissioner gave the notice, in the language of § 31, "as

---

[1] This case was argued on February 4, 1998, before Justices Kass, Smith, and Flannery. Following the death of Justice Flannery, the case was reassigned and Justice Lenk joined in consideration of the case on the basis of the briefs and the record appendix.

soon as may be," after the Department of Revenue (DOR) had determined the tax to be assessed.[2] In this case the commissioner gave his notices of assessment on dates that came fifteen to eighteen months after the tax had been determined, time periods that in ordinary contemplation of the phrase "as soon as may be" seem to stretch it beyond its limits. The commissioner responds that a high tech information system breakdown enlarged the standard dimensions of "as soon as may be" and that the notice of assessment went out "as soon as could be" which, for these purposes, defines "as soon as may be." We turn to the facts. They are calculated to warm the heart of anyone whose hours and days have ever been wasted by an electronic labor-saving device.

Tambrands is a Delaware corporation, with a principal place of business in New York. It manufactures and sells tampons nationwide and abroad. The tax dispute concerns corporate excise tax due for 1984, 1985, and 1986 on account of business that Tambrands carried on in Massachusetts. Tambrands filed timely tax returns (on Form 355B) for each of those years and paid the tax due as shown on those returns. In 1988, DOR conducted an audit of Tambrands's returns that culminated on December 23, 1988, in the issuance to Tambrands of a notice of intention to assess (NIA), see Massachusetts Taxation and DOR Practice: A Guide to Collections, Audits, Abatements and Appeals § 4.06 (Mass. Continuing Legal Educ., Scharaffa ed., 1996) (Mass. Taxn. Handbook), assessing a deficiency of $317,580, plus interest and penalties of $175,264, for a total deficiency assessment of $492,844. The taxpayer promptly, on January 11, 1989, paid $300,000 on account of the asserted deficiency.

While they engaged in disputation at an administrative level within DOR about the taxes due, the taxpayer and the commissioner on three occasions signed consents (on Form A-37) to extensions of time for the commissioner to assess a deficiency definitively. The taxpayer does not dispute that the definitive assessment of the tax occurred on March 10, 1989, and that it was

---

[2]General Laws c. 62C, § 31, inserted by St. 1976, c. 415, § 22, provides: "If the assessment of any tax is in excess of the amount shown on the return as the tax due, the commissioner shall, *as soon as may be*, give written notice to the taxpayer of the amount of the assessment, the amount of any balance due and the time when the same is required to be paid. Failure to receive such notice shall not affect the validity of the tax." (Emphasis added.)

timely. Contrast *A.W. Chesterton Co.* v. *Commissioner of Rev.*, 45 Mass. App. Ct. 702 (1998). That event, i.e., the assessment, was the occasion after which a notice of assessment was to issue "as soon as may be." See Mass. Taxn. Handbook § 4.14.

Enter in 1988 the Masstax Computer System (MAX), a powerful computer with a powerful program. One of the tasks required of DOR was to place existing tax records into MAX's capacious electronic brain. What must pass for substantial evidence if the Commissioner's case is to survive is fleeting and rather bare bones testimony from Sandra Steele who, as associate deputy commissioner for MAX, had responsibility for putting MAX to work. Steele later became deputy commissioner for account management and control. MAX, Steele explained, was not ready in 1989 to deal with payments against a deficiency made by a taxpayer after notice of intent to assess but before the notice of assessment — precisely what occurred in Tambrands's case. In a prodigy of understatement, Steele testified that back in 1989 MAX "didn't work like clockwork." There was concern at DOR both that MAX would spit out a notice of assessment that failed to reflect anticipatory payments and, worse, might lose, in a record-retention sense, the money the taxpayer had paid. To avoid either mishap, taxpayer accounts on which payments had been made before notices of assessment were placed in problem sets, "looked at by an employee and released manually." In 1989 there were over 100,000 cases in the problem-set category and between eighteen and twenty-one employees to review the accounts. A bit of arithmetic illustrates the problem. If there were nineteen and one-half (taking an average) employees available for 100,000 cases, that results in 5,128 cases per employee. Assuming, on the generous side, the ability to do fourteen cases per day, it would take 366 working days to grind through the problem sets. With allowance for weekends and holidays, vacations, and illness, the cause for the fifteen-month and eighteen-month hiatus between tax assessment and notice of assessment becomes all too apparent.

Tambrands argues, not wholly without force, that the commissioner's position is the bureaucrat's equivalent of "the dog ate my homework" excuse. No case, Tambrands urges, has given so much leeway to "as soon as may be." We turn to the case law and what the record has to tell us in the way of justification for the commissioner's position.

The case law is abundant in stern pronouncements requiring strict adherence by the taxpayer to the timelines and other procedural commands of the taxing statutes. See *Assessors of Brookline* v. *Prudential Ins. Co. of America*, 310 Mass. 300, 308 (1941); *Commissioner of Corps. & Taxn.* v. *St. Botolph Club, Inc.*, 321 Mass. 269, 279 (1947); *Roda Realty Trust* v. *Assessors of Belmont*, 385 Mass. 493, 495-496 (1982); *Nissan Motor Corp. in U.S.A.* v. *Commissioner of Rev.*, 407 Mass. 153, 157 (1990); *Guzman* v. *Assessors of Oxford*, 24 Mass. App. Ct. 118, 120 (1987); *Tilcon Mass., Inc.* v. *Commissioner of Rev.*, 30 Mass. App. Ct. 264, 265-266 (1991). Timely mailing, but late arrival, of an application for abatement is fatal. *Tilcon Mass., Inc.* v. *Commissioner of Rev.*, 30 Mass. App. Ct. at 266-268. As the court said in *Commissioner of Rev.* v. *Marr Scaffolding Co.*, 414 Mass. 489, 495 (1993), "[e]quitable considerations, not prescribed by statute, are not major players in tax matters (and, indeed, often do not even enter the game)."[3] The rationale for this exacting attitude is, in part, that both sides to the taxing transaction, the taxpayer and the tax collector, should know inside of prescribed limitations periods what each owes or may receive or what may be in dispute. Cf. *Tilcon Mass., Inc.* v. *Commissioner of Rev.*, 30 Mass. App. Ct. at 266-267.

There is both irony and appeal in Tambrands's argument that what's sauce for the taxpayer goose is sauce for the tax collector gander. Cf. *A.W. Chesterton Co.* v. *Commissioner of Rev.*, 45 Mass. App. Ct. 702. The problem with the argument, however, is that it does not reach the question at hand. There is no specific limitations period about which to be rigorous. What is novel about the case is that the time limitation to be applied is imprecise: "as soon as may be." Reading a time period into that flexible phrase requires some examination of the circumstances. *Bentley* v. *Ward*, 116 Mass. 333, 334 (1874). In its decision, the Appellate Tax Board found:

"[T]he Board finds, that the appellant's account went into the 'problem set' when it made payment on the NIA. Given that the appellee was converting to a new computer system,

---

[3]Examples of limitations periods that appear in the administrative provisions of the State tax law, G. L. c. 62C, include § 26(*b*) (commissioner may assess tax above what taxpayer showed as due on return within three years of filing of return; taxpayer has thirty days to claim a conference); § 37 (time limit to file application for abatement); and § 39 (time limit for appeals to Appellate Tax Board).

> that a notice of assessment could issue only after a manual review, and that there were only approximately 20 employees responsible for reviewing more than one hundred thousand 'problem set' cases, the Board finds that the delay was reasonable and that the notices of assessment were sent 'as soon as may be' under the circumstances."

To the extent that the question is one of fact, the board's findings are entitled to deference, so long as there is substantial evidence in the record to support the findings. *Towle* v. *Commissioner of Rev.*, 397 Mass. 599, 601-602 (1986). *A.W. Chesterton Co.* v. *Commissioner of Rev.*, 45 Mass. App. Ct. at 709. To the extent the question whether the commissioner has acted "as soon as may be" is a mixed question of law and fact, there again courts accord the Appellate Tax Board "some deference," in part out of recognition of the board's specialized knowledge in the tax field. *Koch* v. *Commissioner of Rev.*, 416 Mass. 540, 555 (1993). *New York Times Sales, Inc.* v. *Commissioner of Rev.*, 40 Mass. App. Ct. 749, 751 (1996).

One might wish to ask if there were alternate methods of issuing notices of assessment, or if it would have been possible to have detailed a larger work force to the task, so that the job might have been done faster. The taxpayer, however, did not inquire into those possibilities, and it was the taxpayer's burden to advance evidence that it was entitled to an abatement of taxes. *Schlaiker* v. *Assessors of Great Barrington*, 365 Mass. 243, 245 (1974). *Donlon* v. *Assessors of Holliston*, 389 Mass. 848, 855 (1983). As the record stood, DOR was doing the best it could with difficult circumstances. Indeed, it could be said to have come up with the best practical solution to avoid a more serious problem: the failure to issue a notice of assessment altogether. See Mass. Taxn. Handbook § 4.17. The Appellate Tax Board, therefore, had a record basis for adopting that view and the corollary conclusion that the notice of assessment had been given by the commissioner "as soon as may be."

The Appellate Tax Board made the observation in its decision that the taxpayer had not been prejudiced by the time it took DOR to give it a notice of assessment. The taxpayer had been advised by the notice of intent to assess as to what claims the commissioner was making, and the DOR and the taxpayer had been actively engaged in continuing negotiations. The board

abated interest and penalties for the time period after the tax assessment was made.

When a precise time limitation in the taxing statute is violated, lack of prejudice to the taxpayer should perhaps not be a consideration. See, however, a line of cases holding that noncompliance by assessors with the strict requirements of the statutes, if it does not affect the rights of the taxpayer, does not render the tax invalid. *McManus* v. *Boston*, 320 Mass. 585, 587 (1947), and cases there cited. See *PMAG, Inc.* v. *Commissioner of Rev.*, 429 Mass. 35, 43 n.8 (1999). Under a fluid time limitation like "as soon as may be," attendant circumstances need to be considered. Among those circumstances would be whether the tax collector or the taxpayer has been prejudiced. The decisive fact in this case is that the commissioner did in fact give the notice of assessment "as soon as may be."

The second sentence of G. L. c. 62C, § 31, provides: "Failure to receive such notice [referring to the notice of assessment] shall not affect the validity of the tax." Similar language appears in G. L. c. 62C, § 26(*b*). We take that statutory provision to be a safeguard against a notice of assessment not reaching its target, as might occur if the taxpayer has moved and not left a change of address with DOR. We do not read the provision to mean that the failure to issue a notice of assessment is without consequence.

*Decision of the Appellate Tax
Board affirmed.*