EMC Corporation *vs.* Commissioner of Revenue.

Suffolk. January 11, 2001. - March 22, 2001.

Present: Marshall, C.J., Greaney, Spina, Cowin, & Sosman, JJ.

*Taxation,* Corporate excise, Abatement. *Statute,* Construction.

Discussion of G. L. c. 62C, § 37, which provides a two-year period within which a person aggrieved by the assessment of a tax may apply for an abatement. [569-573]

This court concluded that the date of the notice of assessment of a tax under G. L. c. 62C, § 37, sent in conformity with G. L. c. 62C, §§ 31 and 32, and not the "date of assessment" described in G. L. c. 62C, § 26 (*b*), set internally by the Commissioner of Revenue, begins the running of the two-year period within which a person aggrieved by the assessment may apply for an abatement. [573-574]

Appeal from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John S. Brown* for the taxpayer.

*Thomas J. Nicholas* for Commissioner of Revenue.

Spina, J. EMC Corporation (taxpayer) received a notice of assessment dated March 16, 1990, reflecting an assessment made on March 2, 1990, by the Commissioner of Revenue (commissioner) pursuant to G. L. c. 62C, § 26 (*b*), of additional corporate excise taxes for 1985. On March 5, 1992, the taxpayer filed an application for abatement with the commissioner. The commissioner failed to act on the application within the time provided under G. L. c. 58A, § 6, and it was deemed denied. The taxpayer appealed to the Appellate Tax Board (board) pursuant to G. L. c. 62C, § 39. The board dismissed the taxpayer's appeal on the ground that it lacked jurisdiction because the taxpayer had not filed its application for abatement within two years from the date the tax was assessed: See G. L.

c. 62C, § 37.[1] The taxpayer appealed to the Appeals Court, and we transferred the appeal to this court on our own motion. We vacate the decision of the board, and remand for a hearing on the merits of the taxpayer's administrative appeal.

This case turns on the construction of that portion of G. L. c. 62C, § 37, which states: "Any person aggrieved by the assessment of a tax . . . may apply in writing to the commissioner . . . for an abatement thereof at any time . . . within two years from the date the tax was assessed or deemed to be assessed . . . ."[2] The commissioner contends that the plain language of the statute dictates that the two-year period should begin to run on the date a tax is assessed under § 26 (*b*). The taxpayer argues that the two-year period should not begin to run until a notice of assessment is sent in conformity with G. L. c. 62C, §§ 31 and 32, because that is when the tax obligation is established and a person becomes "aggrieved" by the assessment.

An assessment under § 26 (*b*) and the date it occurs are internal departmental matters[3] that are not disclosed to the taxpayer until a notice of assessment is sent, which may, but

[1]General Laws c. 62C, § 37, provides in relevant part as follows:

"Any person aggrieved by the assessment of a tax, other than a tax assessed under [c. 65] or [c. 65A], may apply in writing to the commissioner [of revenue], on a form approved by him, for an abatement thereof at any time within three years from the last day for filing the return for such tax, determined without regard to any extension of time, *within two years from the date the tax was assessed or deemed to be assessed,* or within one year from the date that the tax was paid, whichever is later" (emphasis added).

[2]We are concerned with actions by the Commissioner of Revenue (commissioner) that trigger the running of the two-year period. The phrase "deemed to be assessed" refers to actions of, or attributable to, the taxpayer that trigger its running (e.g., a tax may be deemed assessed when the taxpayer files its return). See G. L. c. 62C, § 26 (*a*); 830 Code Mass. Regs. § 62C.26.1(3) (1999).

[3]Title 830 Code Mass. Regs. § 62C.26.1(6)(f) (1993) states: "A deficiency assessment occurs on the date the Commissioner enters the amount of the assessment upon the instruction to bill."

Title 830 Code Mass. Regs. § 62C.26.1(2) (1999) defines an "Instruction to bill" as "an internal Department document that includes the Commissioner's signed and dated statement that a deficiency assessment has been

need not, include the date of assessment.[4] The parties have stipulated that prior to 1988, a notice of assessment did not contain the date of the § 26 (*b*) assessment, and the commissioner had no practice of notifying taxpayers of the § 26 (*b*) assessment date. The parties also have stipulated that before 1988, delays of up to two or three weeks and sometimes longer occurred between the § 26 (*b*) assessment date and the issuance of a notice of assessment.[5]

It is not apparent from the language of § 37 whether the Legislature intended that a taxpayer should have two years from the date of notice of assessment, or whether a taxpayer should have, after notice, only the balance of a two-year period that began on the date of the department's internal setting of the assessment. The latter is particularly troubling because it could result in no time at all, as in the case of a notice sent two years or more after the assessment date, or one not sent at all. We conclude that the statute is ambiguous.

Where a statute is ambiguous, we may look to extrinsic circumstances to determine the intent of the Legislature as to its meaning. Accordingly, "[s]tatutes are to be interpreted . . . in connection with their development, their progression through the legislative body, the history of the times, prior legislation, contemporary customs and conditions and the system of positive law of which they are part . . . ." *Pacific Wool Growers* v. *Commissioner of Corps. & Taxation*, 305 Mass. 197, 199 (1940), quoting *Commonwealth* v. *Welosky*, 276 Mass. 398, 401 (1931), cert. denied, 284 U.S. 684 (1932).

Chapter 62C was inserted by St. 1976, c. 415, § 22. The purpose of the 1976 legislation was to "consolidate[] into one

made and the Commissioner's request that a notice of assessment be issued to the taxpayer." See *A.W. Chesterton Co.* v. *Commissioner of Revenue*, 45 Mass. App. Ct. 702, 702 (1998) (assessment is "an act entirely internal to the . . . department," as is date on which it actually occurs).

[4]See 830 Code Mass. Regs. § 62C.26.1(6)(h)(1)(b)(iv).

[5]Reported decisions indicate that delays between the date of assessment and the date of notice of assessment can be substantially longer. See *Tambrands, Inc.* v. *Commissioner of Revenue*, 46 Mass. App. Ct. 522, 523 (1999) (notice of assessment sent eighteen months after date of assessment); *Jewel Cos.* v. *Commissioner of Revenue*, 12 Mass. App. Tax Bd. Rep. 101, 103-104 (1990) (as of nearly three years after the alleged date of assessment, no notice of assessment yet sent).

chapter the provisions dealing with the administration of almost all [S]tate taxes and to a great extent, [it] imposes a uniform method of administering all taxes." 1977 Ann. Survey Mass. Law § 8.2, at 139. Prior to 1976, and since 1919, the period for filing an application for abatement of a corporate excise tax assessed by the commissioner began running on the date notice of assessment was sent.[6] Statutes permitting abatement of other types of taxes assessed by the commissioner, now covered by § 37, contained filing periods determined by the date of notice of assessment, and differed from one another primarily by the length of those periods.[7] Other than to establish uniform periods within which applications for abatements must be filed, there is no indication that the Legislature intended to change the event that would trigger the running of such periods, namely, the date of notice of assessment.[8] "Statutes are to be construed in the light of the preexisting common and statutory law with reference to the mischief probably intended to be remedied . . . . It is not to be lightly supposed that radical changes in the law were intended where not plainly expressed." (Citations omitted.) *Ferullo's Case*, 331 Mass. 635, 637 (1954). See *Commissioner of Corps. & Taxation* v. *Dalton*, 304 Mass. 147, 150 (1939).

The different administrative interpretations applied to § 37 from the time of its enactment in 1976 until 1988, and thereafter, are revealing. The parties have stipulated that, "[p]rior to 1988, the commissioner may have, on occasion, treated an application for abatement of an assessment as being timely if . . . filed within two years of the date of the Notice of Assessment . . .

---

[6]See G. L. c. 63, § 51, as appearing in St. 1958, c. 503, § 1; as amended by St. 1970, c. 601, § 6; and as amended through St. 1973, c. 708, § 4, prior to repeal by St. 1976, c. 415, § 102 (abatement procedure for corporate excise tax inserted by St. 1919, c. 355, Part I, § 10).

[7]See G. L. c. 62, § 43, as appearing in St. 1964, c. 488, § 1; as amended by St. 1970, c. 601, § 3; and as amended through St. 1973, c. 708, § 2, prior to repeal by St. 1976, c. 415, § 100 (abatement procedure for personal income tax based on date of notice of assessment inserted by St. 1916, c. 269, § 19). See also G. L. c. 64H, § 20, prior to repeal by St. 1976, c. 415, § 112 (abatement procedure for general sales tax based on date notice of assessment sent inserted by St. 1967, c. 757, § 1).

[8]Prior to 1976, the only substantive amendments to the corporate excise tax abatement procedure produced enlargements of the time in which to apply. See St. 1927, c. 225, § 3; St. 1951, c. 529 (also adding additional period); St. 1957, c. 434, § 1; St. 1970, c. 601, § 6.

without regard to whether the application for abatement was filed within two years of the [§ 26 (*b*)] Assessment Date." In light of the fact that prior to 1988, a notice of assessment did not even include the date of assessment and there was no practice of notifying taxpayers of the § 26 (*b*) assessment date, it is difficult to imagine how the date of assessment, and not the date of notice of assessment, was ever used to determine the two-year period in any case. See, e.g., *Block* v. *Commissioner of Revenue*, 8 Mass. App. Tax Bd. Rep. 139, 140 (1987) (board had jurisdiction because "the application[s] for abatement were filed within two years from the date of the Notice of Assessment [G. L. c. 62C, § 37]"). This is especially significant because a timely application for abatement is required for the board's jurisdiction. See *Commissioner of Revenue* v. *A.W. Chesterton Co.*, 406 Mass. 466, 467 (1990); *Commissioner of Revenue* v. *Pat's Super Mkt., Inc.*, 387 Mass. 309 (1982). Although the administrative interpretation of § 37 before 1988 is less than clear, it appears that both the commissioner and the board treated the notice of assessment as the date of assessment for purposes of the two-year period.

In *Jewel Cos.* v. *Commissioner of Revenue*, 12 Mass. App. Tax Bd. Rep. 101, 103-104 (1990), the commissioner admitted in a memorandum of law filed with the board that he adopted the date of the notice of assessment as the date from which the two-year period in § 37 begins to run. He made a similar admission in the administrative proceedings reviewed in *A.W. Chesterton Co.* v. *Commissioner of Revenue*, 45 Mass. App. Ct. 702 (1998), but withdrew it three years later to assert a position consistent with the one now taken. *Id.* at 704 n.3. The board has also relied on the date of notice of assessment, and not the date of the § 26 (*b*) assessment, as the starting date of the two-year period in § 37. See, e.g., *Block* v. *Commissioner of Revenue*, *supra* at 140.

It was not until after 1988, when the § 26 (*b*) assessment dates began to appear in notices of assessment, and after promulgation of the assessment regulation, 830 Code Mass. Regs. § 62C.26.1, on April 14, 1989, that a distinctly different administrative interpretation of § 37 began to emerge. See *Jewel Cos.* v. *Commissioner of Revenue*, *supra*. Where an

administrative interpretation is adopted contemporaneously with the enactment of a statute, it is entitled to deference, especially if it has been observed over time. See *Lowell Gas Co.* v. *Commissioner of Corps. & Taxation*, 377 Mass. 255, 262 (1979). This cannot be said of an administrative interpretation adopted long after the statutory enactment. See *DeBlois* v. *Commissioner of Corps. & Taxation*, 276 Mass. 437, 440 (1931) (rejecting interpretation adopted fourteen years after statute enacted). Cf. *Broadway Nat'l Bank* v. *Commissioner of Corps. & Taxation*, 321 Mass. 25, 30 (1947) (rejecting interpretation adopted nine years after statute enacted). We accord more weight to the interpretation of § 37 given by the commissioner from 1976 to approximately 1988 than that currently adopted. If the words of the statute are indeed as plain as the commissioner now claims, it remains a mystery why they had not revealed their meaning a dozen years earlier. See *DeBlois* v. *Commissioner of Corps. & Taxation, supra.*

The use of the § 26 (*b*) assessment date to trigger the two-year period causes results that are contrary to the goal of uniform administration of State taxes underlying the 1976 legislation. Unlike the other triggering mechanisms described in § 37, which are readily ascertainable by the taxpayer, the assessment date is purely internal to the department. The taxpayer does not learn that the two-year period is running, or has run (as may be the case), until the notice of assessment is received. Although the notice of assessment in this case contains the assessment date, there is no requirement that it do so. See 830 Code Mass. Regs. § 62C.26.1(6)(h)(1)(b)(iv). Further, if the assessment date is provided in the notice of assessment, there is no assurance that it is accurate. See, e.g., *Jewel Cos.* v. *Commissioner of Revenue, supra.* Use of the § 26 (*b*) assessment date also affords taxpayers less actual time than the statute expressly provides to file an application for an abatement, a feature that sets it apart from the other triggering mechanisms within § 37.

It is unlikely that the Legislature intended to abandon the date of notice of assessment as the trigger for the period within which to make application for abatement of a deficiency assessment. It is superior to the assessment date in all practical

respects, and more consonant with the purposes of the 1976 legislation. "Recent decisions of this court have emphasized that statutes embodying procedural requirements should be construed, when possible, to further the statutory scheme intended by the Legislature without creating snares for the unwary." *Becton, Dickinson & Co.* v. *State Tax Comm'n*, 374 Mass. 230, 233 (1978). Use of the date of the notice of assessment accomplishes this result, and it does so in a way that comports more with contemporary notions of openness in government and fundamental fairness. See *SCA Disposal Servs. of New England, Inc.* v. *State Tax Comm'n*, 375 Mass. 338, 341 (1978) (fundamentally unfair to hold taxpayer accountable for untimely appeal to appellate tax board where commissioner's notice of adverse decision not received). The idea that a taxpayer's procedural rights to challenge that assessment can be affected or determined by an internal government act, without notice, is anomalous, at best. One of the hallmarks of due process is notice. See *Goldberg* v. *Kelly*, 397 U.S. 254, 267 (1970); *Armstrong* v. *Manzo*, 380 U.S. 545, 550 (1965).

Finally, the statute should be construed as "a consistent and harmonious whole, capable of producing a rational result consonant with common sense and sound judgment." *State Tax Comm'n* v. *La Touraine Coffee Co.*, 361 Mass. 773, 778 (1972), quoting *Haines* v. *Town Manager of Mansfield*, 320 Mass. 140, 142 (1946). Treating the "date of assessment" in § 37 as the date of notice of assessment has this effect. A deficiency assessment does not become due until the notice of assessment is sent, pursuant to §§ 31 and 32. The taxpayer is not "aggrieved" within the meaning of § 37 until that occurs. But see *Becton, Dickinson & Co.* v. *State Tax Comm'n, supra* at 234 (premature application not fatal where no hope of resolution and deficiency assessment inevitable). This construction imposes no hardship on the department and it eliminates most problems attributable to the delay between the date of assessment and the date of the notice.

The decision of the board is vacated and the matter is remanded to the board for a hearing on the merits of the taxpayer's appeal.

*So ordered.*