CHATHAM CORPORATION *vs.* STATE TAX COMMISSION.

Suffolk. May 5, 1972. — June 23, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, & HENNESSEY, JJ.

*Taxation*, Corporate excise. *Words*, "Exclusively."

Where a corporate taxpayer was engaged in manufacturing for several days of its fiscal year prior to the bulk sale of substantially all of its tangible assets and thereafter engaged in the security business, the taxpayer was not "exclusively" engaged in the security business during that year and was not entitled to the benefits of G. L. c. 63, § 38B. [219–220]

Where the Commissioner of Corporations and Taxation did not determine the income of a corporate taxpayer to be in excess of the income shown by its return, but merely assessed the excise on that income on the basis of § 32 of G. L. c. 63 rather than § 38B, the taxpayer was not entitled to a notice of the assessment under G. L. c. 63, § 44. [220]

Where the Commissioner of Corporations and Taxation did not assess an "additional tax" on a corporate taxpayer, but merely made an original assessment of the excise on the taxpayer's income on the basis of § 32 of G. L. c. 63 rather than § 38B, the taxpayer was not entitled to a notice of assessment under G. L. c. 63, § 45. [220–221]

APPEAL from a decision by the Appellate Tax Board.

*Chester M. Howe* for the taxpayer.

*Daniel J. Johnedis*, Assistant Attorney General, for the State Tax Commission.

---

HENNESSEY, J.    This is an appeal pursuant to G. L. c. 58A, § 13, from a decision of the Appellate Tax Board affirming the refusal of the State Tax Commission to abate a corporate excise assessed against Chatham under G. L. c. 63, § 32, for its taxable year beginning July 1, 1965.

We set forth the facts.    Chatham was incorporated in 1950 under the name The Beacon Company, Inc.    The company was a full scale classified manufacturing corporation in the business of making and distributing household cleaning products.    In February, 1965, negotiations commenced for the bulk sale of substantially all of Beacon's tangible assets to Lehn & Fink Corporation. On June 15, 1965, the purchase and sale agreement between the two corporations was executed and on June 16, 1965, Beacon's shareholders and directors voted to approve the sale.

The purchase and sale agreement provided that title to Beacon's assets, including its machinery, equipment and good will, would be transferred on July 7, 1965. It further provided that "[d]uring the period from the date hereof [June 15, 1965] to the closing date [July 7, 1965] the sellers shall continue to conduct their operations according to their ordinary and usual course of business."    From June 15, 1965, through July 7, 1965, Beacon continued its manufacturing operations in the ordinary course of business.    Beacon's fiscal year ended on June 30, 1965.

Beacon's manufacturing operations in its fiscal year beginning July 1, 1965, consisted of the first seven calendar days or three business days of July.    After July 7, 1965, Beacon conducted no further manufacturing activity and on July 9, 1965, its name was changed to the Chatham Corporation.    Subsequent to July 7, 1965, Chatham engaged in the business of buying, selling, dealing in and holding securities in its own behalf and not as a broker.

Chatham's excise return for the taxable year in question reflected assets and liabilities of both Beacon and

Chatham. During the first seven days of its fiscal year beginning July 1, 1965, Beacon received $38,015.52 from net manufacturing sales. This income resulted from shipping orders Beacon had received prior to July 1, 1965. Beacon also received $283,231.81 as a result of the bulk sale of its inventory to Lehn & Fink. Between July 1, 1965, and July 7, 1965, Beacon bought merchandise for manufacture or sale in the amount of $25,402.25. Beacon's gross income from net and bulk sales was $321,247.33. Its cost of goods sold was $309,767.34 resulting in a gross profit of $11,479.99 from the sale of its manufactured products. Combining Beacon's cost of goods sold and various deductions from its gross sales income, there resulted a net loss from manufacturing operations of approximately $20,000 during the year in question.

On June 28, 1966, Chatham made a timely application for classification as a security corporation under G. L. c. 63, § 38B, for its fiscal year ending June 30, 1966. On November 18, 1966, without having first given Chatham notice of its denial of Chatham's application for classification as a § 38B security corporation and of its intention to assess under § 32, the Commissioner of Corporations and Taxation (Commissioner) sent Chatham a notice of assessment for the fiscal year ending 1966 in the amount of $85,809.36, having computed this tax liability under § 32 rather than § 38B. On January 3, 1967, the Commissioner denied Chatham's application for classification as a § 38B security corporation.

On April 12, 1968, Chatham filed with the State Tax Commission an application for abatement of tax for its fiscal year ending 1966 in the amount of $58,388.63 on the grounds that (1) the Commissioner had erroneously computed Chatham's tax liability under § 32 rather than § 38B; and (2) the Commissioner had failed to comply with the statutory notice requirements of G. L. c. 63, § 44. The Commissioner's decision denying the request for abatement was affirmed by the Appellate

Tax Board. Chatham appeals from the latter's decision. There was no error.

1. General Laws c. 63, § 38B, as amended, applies to "[e]very domestic business corporation . . . which is engaged *exclusively* in buying, selling, dealing in, or holding securities on its own behalf and not as a broker" (emphasis supplied). An examination of the language and history of § 38B indicates that it was intended to confer favorable tax benefits on those corporations exclusively engaged in the business of buying, selling and holding securities on their own behalf. To accomplish this result the Legislature exempted such corporations from taxation as ordinary business corporations and mandated that they be taxed in accordance with the personal income tax law. Nichols, Taxation in Massachusetts (3d ed.) 610–612. Barrett and Bailey, Taxation (2d ed.) § 831. In order to qualify for the favorable treatment, § 38B requires that the corporation be "engaged exclusively in buying, selling, dealing in, or holding securities on its own behalf." Although the section has been amended several times since its enactment in 1929, the word "exclusively" appears in the original enactment and has been retained in every subsequent amendment. St. 1929, c. 359, § 1.

We have often stated that every word of a legislative enactment is to be given force and effect (*Commissioners of Pub. Works* v. *Cities Serv. Oil Co.* 308 Mass. 349, 360) and that words so used are to be construed according to their natural and ordinary meaning. *Davey Bros. Inc.* v. *Stop & Shop, Inc.* 351 Mass. 59, 63. Guided by these principles, we are of opinion that the Legislature, by its use of the word "exclusively," intended that corporations engaged in businesses other than those enumerated in § 38B during any portion of their taxable year are not entitled to the benefits afforded by § 38B. Black's Law Dictionary (4th ed.). Any other result would fail to give meaning to the express words of the statute.

In the present case, the record indicates that Chatham

was engaged in the manufacturing business for several days of its 1966 fiscal year. Consequently, the Appellate Tax Board was correct in determining that Chatham was not entitled to the benefits of § 38B since it was not "exclusively" engaged in the security business during its 1966 fiscal year.

2. Chatham argues that it was entitled to a notice of assessment under G. L. c. 63, §§ 44, 45. We disagree.

General Laws c. 63, § 44, as amended, provides, in part: "The commissioner shall determine . . . and shall assess, the excise provided by sections thirty to fifty-two . . . . He shall not determine the income of any corporation . . . to be in excess of the income shown by its return without first giving notice to the corporation to be assessed of his intention and giving it an opportunity . . . to explain the apparent incorrectness of its return." Under the terms of this section, the Commissioner is authorized to make original assessments. No notice of intention to make such assessments is required by the section. The section does require a notice of intention to assess where the Commissioner determines "the income of any corporation . . . to be in excess of the income shown by its return." See *Upjohn Co.* v. *State Tax Commn.* 347 Mass. 281, 283, where this court stated that § 44 "contains a definite prohibition against increasing taxable income without notice." In the present case, however, the Commissioner did not challenge or in any way change the income as reported by Chatham. He merely assessed the excise on that income on the basis of § 32 rather than § 38B.

Chatham's reliance on § 45 is also misplaced. That section provides, in part, that: "[i]f the commissioner discovers . . . that the full amount of any tax due under sections thirty to fifty-one, inclusive, . . . has not been assessed, he may assess the same, with interest . . . . to the date when the additional tax so assessed is required to be paid hereunder, first giving notice to the corporation to be assessed of his intention . . .; and a representative of the corporation shall . . . have an op-

portunity . . . to confer with the commissioner as to the proposed assessment." By its language, this section presumes that an original assessment under § 44 has been made and requires that an additional assessment be made for the "additional tax" determined to be due. See Nichols, Taxation in Massachusetts (3d ed.) 627, Barrett and Bailey, Taxation (2d ed.) § 882. In this case, the disputed excise resulted from an original assessment and not from one designed to collect an "additional tax."

Finally, we observe that in making the original assessment, the Commissioner did give Chatham the notice required in those cases where the assessment was "in excess of the amount shown on the return as the excise due." G. L. c. 63, § 48. No further action was required by the Commissioner. The taxpayer here does not contend it did not receive this notice and, even if it had not, the validity of the tax would not have been affected thereby. G. L. c. 63, § 48.

3. The decision of the Appellate Tax Board is affirmed.

*So ordered.*