## RHI HOLDINGS, INC. *VS.* COMMISSIONER OF REVENUE.[1]

No. 98-P-1164.

Suffolk. October 5, 2000. - May 25, 2001.

Present: LAURENCE, DREBEN, & GELINAS, JJ.

*Taxation,* Abatement, Corporate excise. *Administrative Law,* Judicial review, Substantial evidence, Agency's interpretation of statute. *Statute,* Construction. *Limitations, Statute of.*

The Appellate Tax Board had no jurisdiction to compel the Commissioner of Revenue to exercise his discretion, if any, under G. L. c. 62C, § 36, to abate or refund an allegedly illegally assessed tax. [684]

In the circumstances of an appeal from a decision of the Appellate Tax Board, this court was unable to consider a claim not previously considered by the board. [684-685]

General Laws c. 62, § 37, provides three separate limitations periods, each limited to and running from a discrete triggering event, during which a taxpayer may file an application for abatement; accordingly, the Appellate Tax Board correctly concluded, pursuant to that statute, that a taxpayer's 1988 application for abatement was untimely as to deemed assessments occurring in 1982 and 1984 for tax years 1981 and 1983, respectively, but timely as to additional deficiency assessments made in 1986 for those tax years. [686-690]

APPEAL from a decision of the Appellate Tax Board.

The case was submitted on briefs.

*Louis J. Scerra, Jr.,* for the taxpayer.

*Hung T. Tran,* Assistant Attorney General, for Commissioner of Revenue.

LAURENCE, J. RHI Holdings, Inc. (taxpayer), appeals from a

---

[1]This case was originally decided by memorandum and order on February 9, 2001, under rule 1:28 of the Appeals Court. See 50 Mass. App. Ct. 1116 (2001). It later was represented (by the Attorney General and the Commissioner of Revenue) to the panel which had decided this matter, that the decision would be helpful if published as an opinion. It decided that the suggestion was proper. This opinion in general follows the original rule 1:28 memorandum and order with minor revisions. — Reporter.

decision of the Appellate Tax Board (board) determining that it is entitled only to a partial abatement of corporate excise taxes for tax years 1981 and 1983. The taxpayer asserts that the board incorrectly concluded that its abatement application was untimely as to certain of its assessments for those years. As a result of this claimed error, the taxpayer argues that it should receive a larger abatement, pursuant to the allocation formula specified in *General Elec. Co.* v. *Commissioner of Rev.*, 402 Mass. 523 (1988). We affirm the board's decision.

## I. Factual Background

We take our facts as found by the board. G. L. c. 58A, § 13. During the relevant time period, the taxpayer's predecessor in interest was a Wisconsin corporation engaged, with two other affiliated corporations, in business in the Commonwealth.[2] On July 15, 1982, and July 7, 1984, the taxpayer filed consolidated returns for tax years 1981 and 1983, respectively, showing substantial self-assessed[3] tax due for both years. Because the taxpayer's principal reporting company was a non-Massachusetts corporation, the taxpayer utilized for its self-assessment the income allocation method specified in the Commissioner of Revenue's Letter Ruling 79-42, 3 Official MassTax Guide at 706 (West 2001).

On March 26, 1986, after auditing the taxpayer's returns, the commissioner notified the taxpayer of deficiency assessments for tax years 1981 and 1983, indicating that the taxpayer owed additional taxes and associated interest for those years. On March 25, 1988, the taxpayer filed an application for abate-

---

[2]These persons will be referenced collectively herein as the taxpayer.

[3]"An assessment of a tax liability may come about in two ways: by self-assessment or by a deficiency assessment made by DOR [Department of Revenue]. A self-assessment occurs when a taxpayer files a return. The tax is 'deemed assessed' when the return is filed or required to be filed, whichever is later, and in the amount shown on the return or properly due, whichever is less. . . . If DOR determines, through audit or otherwise, that the full amount of a tax is not assessed or deemed assessed (as when no return has been filed), a deficiency assessment may be made." AP 611.1, 5 Official MassTax Guide at 678 (West 2001).

ment[4] for the years 1981 and 1983. As originally filed, the taxpayer indicated that the reason it had filed was to request an "adjustment of an additional assessment."

In April, 1988, the Supreme Judicial Court released its opinion in *General Elec. Co.* v. *Commissioner of Rev.*, 402 Mass. 523 (1988). There, the court held that the commissioner's prescribed method for apportioning combined net income of multistate entities as set forth in letter ruling 79-42 was inconsistent with G. L. c. 63, § 32B, and that a different method should have been employed. *Id.* at 530. In 1992, the taxpayer notified the commissioner that it wished to amend its 1988 application for abatement so as to recompute its combined net income using the method approved in *General Electric*.[5]

In December, 1992, the commissioner, after a hearing, issued a letter of proposed determination. In that letter the commissioner agreed that, although recalculating pursuant to *General Electric* would reduce the taxpayer's taxes by substantial amounts, such recalculation was required only as to the 1986 deficiency assessments, because the taxpayer's 1988 application for abatement was untimely as to the 1981 and 1983 self-assessments. In December, 1993, the taxpayer filed its petition with the board seeking review of the commissioner's decision. The board ultimately concluded, in its formal opinion and order issued in April, 1998, that "even though [the taxpayer] was allowed to amend its abatement application to include issues beyond the scope of the [1986] deficiency assessment, the [taxpayer's] refund entitlement [properly] was limited to the

---

[4]In the current regulations, an abatement is defined as "the determination by the Commissioner that an assessment exceeds the amount properly due and the adjustment by the Commissioner of the amount in the Commissioner's assessment records." 830 Code Mass. Regs. § 62C.26.1(2) (1993).

[5]Almost immediately after *General Electric* was decided and long before the taxpayer sought to amend its application, the Legislature amended § 32B. See G. L. c. 63, § 32B, as amended by St. 1988, c. 202, § 15. This amendment placed in doubt the continuing viability of *General Electric*'s central holding. See *Farrell Enterprises, Inc.* v. *Commissioner of Rev.*, 46 Mass. App. Ct. 564, 567 n.6, 569-570 (1999). Because the issue is not essential to our ruling today and because no party suggests the contrary, we assume for purposes here that the allocation method prescribed in *General Electric* applies to this case.

amount of the [1986] deficiency assessment." This appeal
followed.

## II. Preliminary Matters

The taxpayer's fall-back assertion that the board should have
compelled the commissioner to use his "inherent power" to
"abate" the taxpayer's "illegally assessed" tax pursuant to
G. L. c. 62C, § 36, is without merit. The board had no jurisdic-
tion to compel the commissioner to exercise his discretion, if
any, under § 36 to "abate" or "refund" an "illegally assessed"
tax. See G. L. c. 62C, § 41 (the abatement process under §§ 37-
40 "shall be exclusive, whether or not the tax is wholly il-
legal"); *Commissioner of Rev.* v. *A.W. Chesterton Co.*, 406
Mass. 466, 467-469 (1990) (the board has jurisdiction to
entertain proceedings for relief only as prescribed by statute; as-
suming without deciding that the commissioner has the inherent
power to refund or abate an illegally assessed tax pursuant to
§ 36, the board is without jurisdiction to compel the commis-
sioner to exercise that power if the commissioner has chosen
not to do so).

We also reject the taxpayer's alternative contention that this
court can and should order the commissioner to refund the
taxpayer's "illegally assessed" tax under § 36. We are a review-
ing court, not a court of original jurisdiction, and do not consider
claims not previously considered by the board. See G. L. c. 58A,
§ 13; G. L. c. 211A, § 10. See also *New Bedford Gas & Edison
Light Co.* v. *Assessors of Dartmouth*, 368 Mass. 745, 751-752
(1975) (even constitutional claim not presented to board may
not be considered); *Minchin* v. *Commissioner of Rev.*, 393 Mass.
1004, 1004-1005 (1984) (same). Although the taxpayer argu-
ably identified the substance of this claim in its petition to the
board, it concedes that the board was jurisdictionally incapable
of considering it, see *Commissioner of Rev.* v. *A.W. Chesterton
Co.*, *supra* at 467-469, and that it in fact made no attempt to
argue the claim before the board. We conclude, therefore, that,

like the board, we may not consider the taxpayer's § 36 "inherent authority" claim.[6]

### III. Discussion

As to the taxpayer's core contention — that the board erred in concluding that its March, 1988, abatement application, as subsequently amended, was timely as to the commissioner's 1986 deficiency assessments but untimely as to the 1981 and 1983 self-assessments — we begin by acknowledging relevant basic principles.

"A decision of the board will not be reversed or modified if it is based on substantial evidence and a correct application of the law. In reviewing mixed questions of fact and law, the board's expertise in tax matters must be recognized, and its decisions are due some deference." *Erving Paper Mills Corp.* v. *Commissioner of Rev.*, 49 Mass. App. Ct. 14, 17 (2000) (internal quotation marks and citations omitted). "The board is an agency charged with the administration of tax law to whose interpretation of tax statutes we may give weight." *A.W. Chesterton Co.* v. *Commissioner of Rev.*, 45 Mass. App. Ct. 702, 710 (1998). See, e.g., *McCarthy* v. *Commissioner of Rev.*, 391 Mass. 630, 632 (1984). Further, "[w]herever possible, we give meaning to each word in the legislation [at issue]; no word in a statute should be considered superfluous." *International Org. of Masters, Mates & Pilots* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.*, 392 Mass. 811, 813 (1984). See *Chatham Corp.* v. *State Tax Commn.*, 362 Mass. 216, 219 (1972) (every word in a legislative enactment, including a tax statute, is to be given force and effect). Also, however, it "is a familiar principle that tax laws are to be strictly construed," *McCarthy* v. *Commissioner of Rev.*, *supra* at 632; and to "whatever extent the

---

[6]We also observe, without deciding, that to prevail on this claim the taxpayer must first show that it paid more than was assessed, that is, that there exists some "overpayment" that the commissioner may "refund." See G. L. c. 62C, § 36. See also 830 Code Mass. Regs. § 62C.26.1(2) (1999). In this case, the taxpayer does not claim it paid more than was assessed but rather that the amount assessed was excessive. "Therefore, there seems to have been no overpayment in the § 36 sense," *Commissioner of Rev.* v. *A.W. Chesterson Co.*, *supra* at 469 n.1, and there is, therefore, nothing that the commissioner can do in any event under § 36.

statute is ambiguous, we construe it in favor of the taxpayer."
*Electronics Corp. of America* v. *Commissioner of Rev.*, 402
Mass. 672, 675 (1988). The application of these principles to
this case does not avail the taxpayer.

When the taxpayer filed its application for abatement, G. L.
c. 62C, § 37, provided, in relevant part:

> "Any person aggrieved by the assessment of a tax . . .
> may apply in writing to the commissioner . . . for an
> abatement thereof at any time within three years from the
> last day for filing the return for such tax, . . . within two
> years from the date the tax was assessed or deemed to be
> assessed, or within one year from the date that the tax was
> paid, whichever is later."

G. L. c. 62C, § 37, as amended by St. 1980, c. 403, § 8.[7] In
this case the taxpayer concedes that its application for abate-
ment was timely only if considered under the two-year limita-
tions provision of § 37. In this regard the taxpayer was
"deemed to be assessed" on or about the date it filed its returns
on July 15, 1982, and July 7, 1984, respectively. See G. L.
c. 62C, § 26(*a*); *Supermarkets Gen. Corp.* v. *Commissioner of
Rev.*, 402 Mass. 679, 683 (1988); AP 611.1, 5 Official MassTax
Guide at 678 (West 2001). The commissioner also notified the
taxpayer of an additional assessment on March 26, 1986.
Because the taxpayer did not file its original application for
abatement until March 25, 1988, the board correctly determined
that the taxpayer's application, filed nearly four years after the
most recent "deemed assessment" but within two years of the
1986 assessments, was untimely as to the earlier "deemed as-
sessments," though timely as to the later 1986 assessments.

The taxpayer argues that, because it filed its original 1988 ap-
plication for abatement within two years of the 1986 deficiency
assessments, its application in effect relates back to the earlier
"deemed assessments" and therefore remains timely as to those
assessments. The basis for this assertion is the taxpayer's
contention that "assessment" within the meaning of § 37 neces-

---

[7]The subsequent 1993 amendments to § 37, generally concerning agree-
ments extending the period during which assessments may be made pursuant
to § 27, are not here at issue. See G. L. c. 62C, § 37, as amended by St.
1993, c. 110, § 122.

sarily means "the full amount of any tax due, including any tax deemed to be assessed on the return plus any subsequent additional tax due on audit." We agree with the commissioner that it does not.

Section 37 does not represent an interpretative terra incognita shrouded in a fog of ambiguity. On the contrary, the Supreme Judicial Court has at least twice considered the limitations provisions of § 37. On those occasions the court, after considering the statute as a whole, generally concluded that § 37 provides three separate limitations periods running from a variety of triggering events: (1) a three-year period running from the date of filing; (2) a two-year period running from any subsequent assessment or deemed assessment; and (3) a one-year period running from the date of payment. Each triggering event is distinct, and each gives rise to a distinct limitations period. The taxpayer may take advantage of any of the limitations periods applicable to the taxpayer's circumstances. *Electronics Corp. of America* v. *Commissioner of Rev.*, 402 Mass. at 674-677; *Supermarkets Gen. Corp.* v. *Commissioner of Rev.*, 402 Mass. at 683-684.

Most interestingly for instant purposes, in *Electronics Corp.* the commissioner argued that interpreting § 37 as creating discrete triggering events having different limitations periods effectively would allow any taxpayer to challenge any tax at any time provided only that the taxpayer filed its application within an applicable limitations period. The Supreme Judicial Court, however, noted that this is not so:

> "Section 37 permits applications for abatement of 'a tax' to be filed within one year from the date that 'the tax was paid.' In this case, the taxpayer admits that the only tax that was paid within one year of the abatement applications was a portion of the total tax that had been due. It is neither unreasonable nor contrary to the language of the statute for the commissioner to limit any abatement to that amount."

*Electronics Corp. of America* v. *Commissioner of Rev.*, *supra* at

677.[8] See *Supermarkets Gen. Corp.* v. *Commissioner of Rev.*, *supra* at 683 (section 37 "clearly contemplates that the dates of *actual assessment* and *deemed assessment* need not be identical, and that a taxpayer may benefit from whatever is the later date" [emphasis supplied]).

This interpretation, that the limitations periods provided by § 37 are limited to the discrete events that trigger those periods, is entirely consistent with the commissioner's long-standing regulation. 830 Code Mass. Regs. § 62C.37.1(3) (1988). During the time period relevant to this case, that regulation provided that if:

> "more than three years have expired from the due date of the return and an application for abatement is filed within two years of an assessment the Commissioner will grant an abatement *only to the extent* that it relates to *that* assessment. If the time for filing an abatement application has otherwise expired and an application for abatement is filed within one year of a payment of a portion of an assessment, the Commissioner will not grant an abatement in excess of the payment." (Emphasis supplied.)

The taxpayer asserts that this interpretation is inconsistent with various other statutory provisions. It points particularly to the word "assessment" as used in G. L. c. 62C, § 31, as necessarily encompassing the total tax paid for any given tax year. We do not agree. Initially, we note that § 31 is concerned with notice rather than with assessments per se. It is not obvious, therefore, that § 31 is a valid source from which to draw useful parallels.

Moreover, the language of § 31 is not inconsistent with the thrust of the commissioner's interpretative regulation. Section 31 specifies that if the commissioner determines that an "assessment of any tax is in excess of the amount shown on the return as the tax due," the commissioner shall notify the taxpayer of the additional tax due under the assessment. In other words, § 31, like § 37, draws a distinction between a

---

[8]The taxpayer argues that *Electronics Corp.* is inapposite here because it dealt with "payments" rather than "assessments." While this is an accurate observation, we fail to apprehend how this renders the principles operating in *Electronics Corp.* inapplicable to this case.

"deemed assessment" — that is, a determination of a tax "at the time when the return is filed or required to be filed," G. L. c. 62C, § 26(*a*) — and a subsequent assessment determining that additional tax is owed. Such language supports the commissioner's interpretation insofar as it draws substantive distinctions between, and consequences flowing from, discretely identified events.[9]

Unlike the commissioner's interpretation, the taxpayer's proposed construction would render much of the language of § 37 meaningless or surplusage. If, for example, an "assessment" necessarily includes within it a "deemed assessment," a "filing," and a "tax," as the taxpayer contends, there would appear to be little reason for the Legislature to have created the three distinct limitations periods at issue or to have chosen the various triggering events listed in § 37. We reject such a construction in favor of the more rational, textually based, and established interpretation we affirm here. See *Chatham Corp.* v. *State Tax Commn.*, 362 Mass. at 219; *International Org. of Masters, Mates & Pilots* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.*, 392 Mass. at 813.

The taxpayer further argues that the result reached by the board leads to inequitable consequences. Permitting the commissioner to assess additional taxes after returns have been filed without at the same time relating the taxpayer's abatement application back to that original filing will, the taxpayer submits, allow the commissioner to assess taxes that the taxpayer cannot challenge. We do not agree. Under § 37 the taxpayer may, if it timely files an abatement application, challenge each assessment. See G. L. c. 62C, § 37; *Electronics Corp.* v. *Commissioner of Rev.*, 402 Mass. at 674-677; *Supermarkets Gen. Corp.* v. *Commissioner of Rev.*, 402 Mass. at 683-684. We see nothing unfair or inequitable in this result.

The taxpayer's underlying concern is that the statute's opera-

---

[9]See also G. L. c. 62C, § 26(*b*) (if the commissioner determines that the "full amount of any tax has not been assessed *or* is not deemed to be assessed" the commissioner may "assess the same with interest" by a "deficiency assessment" [emphasis supplied]); 830 Code Mass. Regs. § 62C.26.1(4) (1999) (if the "full amount of the tax has not been assessed or deemed to be assessed" the commissioner must give notice to the taxpayer "of deficiency assessments").

tion is unfair because it imposes a time limit within which a taxpayer may challenge an assessment. Unfortunately, "[t]he central purpose of a statute of limitations is to bar all claims asserted after a certain period of time has elapsed from the date the right accrued. . . . Statutes of limitation operate mechanically, in a manner completely unrelated to the merits of a case." *Miller* v. *Labor Relations Commn.*, 33 Mass. App. Ct. 404, 407 (1992) (citations omitted). A statute of limitations, though necessarily arbitrary, reflects a legislatively considered policy determination "concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones." *J. Geils Band Employee Benefit Plan* v. *Smith Barney Inc.*, 76 F.3d 1245, 1254 (1st Cir.), cert. denied, 519 U.S. 823 (1996), quoting from *Johnson* v. *Railway Exp. Agency, Inc.*, 421 U.S. 454, 463-464 (1975). See *Swasey* v. *Barron*, 46 Mass. App. Ct. 127, 132 (1999) (there are "long-standing important policy considerations underlying enforcement of statutes of limitations"). While we recognize that a statute of limitations may operate "inequitably" in a particular situation, we cannot second-guess the Legislature's considered policy decisions.

The decision of the Appellate Tax Board is, accordingly, affirmed.

*So ordered.*