DANA LEASE FINANCE CORP. *vs.* COMMISSIONER OF REVENUE.

No. 99-P-1774.

Suffolk. October 11, 2001. - February 20, 2002.

Present: PERRETTA, KAPLAN, & BECK, JJ.

*Taxation,* Corporate excise, Abatement. *Words,* "Single tax."

A corporate taxpayer exceeded the time limit prescribed by G. L. c. 62C, § 37, for filing its applications for abatement of the net worth measure of its corporate excise, and the Commissioner of Revenue correctly denied the applications. [842-846]

APPEAL from a decision of the Appellate Tax Board.

*John S. Brown* (*Matthew D. Schnall* with him) for the plaintiff.

*Thomas K. Condon* for the defendant.

KAPLAN, J. We affirm a decision of the Appellate Tax Board holding that the taxpayer herein exceeded the time limit prescribed by statute for filing its applications for abatement of the net worth measure of its corporate excise and that, accordingly, the Commissioner of Revenue (commissioner) correctly denied the applications.

The taxpayer, Dana Lease Finance Corp. (DLF), classified as a "foreign," "intangible property" corporation, filed returns reporting one component of its corporate excise, the *net worth measure,* for the tax years 1989, 1990, and 1991, on the dates, respectively, September 15 of 1990, 1991, and 1992. The due dates of the returns were each on the preceding March 15. Following an audit of the returns, the commissioner on January 3, 1993, sent DLF a notice of intention to assess (NIA) additional taxes for those years totaling $12,950 (plus interest). The NIA informed the taxpayer it had thirty days to request a conference to discuss the proposed assessment. See G. L. c. 62C, § 26(*b*).

DLF did not respond. On February 11, 1993, the commissioner made the assessment, of which DLF was advised by notice of assessment (NOA) dated February 12, 1993.

DLF wrote the commissioner on February 23, 1993, that it agreed with the assessment except for the amount of the increase resulting from the commissioner's determination that the "payroll" factor, used in calculating DLF's net worth measure, was "insignificant." See G. L. c. 63, § 38(*g*).[1] DLF enclosed a check for $8,577.04 ($6,496 plus interest) for the agreed part of the assessment. DLF went on to request a conference, but the commissioner, in reply, noting that the request was tardy, reminded DLF it could still apply for abatement if it chose to contest the assessment.

On or about September 20, 1993, DLF paid the remaining balance of the assessment, including interest and penalties. It was not until July 27, 1995, many months later, that it filed its applications for abatement (using form CA-6) for the three tax years. These applications claimed a refund of $12,950 (plus interest), the equivalent of the February 11, 1993, assessment.

The commissioner on December 6, 1995, wrote DLF that its applications in respect to the February 1993 assessment for the tax years 1989 and 1990 were denied as untimely, outlawed by G. L. c. 62C, § 37, the limitations statute (reproduced *infra* in our text). Further, on January 29, 1996, DLF withdrew its consent to the extended consideration of its application for abatement for tax year 1991, and the application was deemed denied as of that date. See G. L. c. 58A, § 6.

DLF appealed to the Appellate Tax Board (board), and the board's decision, noted above, was for the commissioner, allowing his motion to dismiss the appeal, and thereby upholding his

---

[1]For corporations having income from business which is taxable both here and in other States, income is apportioned to Massachusetts by multiplying taxable net income by a fraction called the "income apportionment percentage," see G. L. c. 63, §§ 30(9), 38(*c*). This uses the sum of three factors, "property," "payroll," and "sales" in the numerator; if a factor is "insignificant," G. L. c. 63, § 38(*g*), it is eliminated and the denominator of the fraction is reduced, and the result in the present case is to increase the fraction and thus the taxable net income apportioned to Massachusetts, with effect also on the net worth component of the excise as applied to "intangible property" corporations. See § 30(8), (9).

view that the taxpayer had failed to comply with the time requirements of § 37.

We turn to the assessment on the other component of the excise, the *net income measure.* Dana Corporation (Dana), as "principal reporting corporation," 830 Code Mass. Regs. § 63.32B.1(2) (1993), filed a combined return reporting income, see G. L. c. 63, § 32B, on behalf of certain corporations affiliated with it, including DLF, for each of the tax years 1989, 1990, and 1991. On January 1, 1993, the commissioner issued an NIA to Dana, showing a total additional $472,650 due (plus interest). Evidently this followed in part from the commissioner's determination about the payroll factor insignificance in the case of DLF and two other affiliated corporations in the group.

In contrast to DLF, Dana did not fall foul of the limitations statute. On January 26, 1993, it paid in $324,139, reflecting its agreement pro tanto with the commissioner, and joined in a conference on the questioned assessment on July 2, 1993. The commissioner issued a letter of determination on July 22, 1993, confirming his position, and sent Dana the expected NOA dated August 13, 1993. Dana paid the balance of the assessment and entered a timely application for abatement, which was denied. Dana has appealed to the board for review of the assessment on substantive grounds and the appeal is still pending there.

1. Section 37 of G. L. c. 62C provides in part (omitting irrelevant exceptions):

> "Any person aggrieved by the assessment of a tax . . . may apply in writing to the commissioner, on a form approved by him, for an abatement thereof at any time [1] within three years from the last day for filing the return for such tax, determined without regard to any extension of time, [2] within two years from the date the tax was assessed or deemed to be assessed, or [3] within one year from the date that the tax was paid, whichever is later . . . ."

As we recently had occasion to say in *RHI Holdings, Inc.* v. *Commissioner of Rev.*, 51 Mass. App. Ct. 681, 687 (2001), section 37 "provides three separate limitations periods running from a variety of triggering events: [the three indicated above]. Each triggering event is distinct, and each gives rise to a distinct

limitations period. The taxpayer may take advantage of any of the limitations periods applicable to the taxpayer's circumstances."

Tested by the statute, DLF's applications for abatement were out of date, and the board, by its findings, report, and opinion, correctly so held. Three years from the due dates of the 1989, 1990, and 1991 returns were, respectively, March 15, 1993, March 15, 1994, and March 15, 1995. Two years from the date of the assessment for the three tax years was February 11, 1995. One year from the date of payment was September 20, 1994. The board found that the last date on which DLF could have filed timely abatement applications for the tax years 1989 and 1990 was February 11, 1995, two years from the assessment of February 11, 1993. The last day for the tax year 1991 was March 15, 1995, three years from the date when the 1991 tax return was due. But DLF did not file its abatement applications until July 27, 1995.

Timely filing of an abatement application has long been held a condition of invoking the "jurisdiction" of the Appellate Tax Board. See *Assessors of Boston* v. *Suffolk Law Sch.*, 295 Mass. 489, 492 (1936); *New Bedford Gas & Edison Light Co.* v. *Assessors of Dartmouth*, 368 Mass. 745, 747 (1975); *Commissioner of Rev.* v. *Pat's Super Market, Inc.*, 387 Mass. 309, 311 (1982); *Nissan Motor Corp. in U.S.A.* v. *Commissioner of Rev.*, 407 Mass. 153, 157 (1990); *Tilcon Massachusetts, Inc.* v. *Commissioner of Rev.*, 30 Mass. App. Ct. 264, 264-267 (1991). The consequence of the untimely filing of DLF's abatement application is that DLF may not recover any part of the questioned net worth assessment. See *RHI Holdings, Inc.* v. *Commissioner of Rev.*, 51 Mass. App. Ct. at 683-684 & 688 n.8. But in Dana's appeal pending before the board, any party may contend the net worth assessment against DLF was substantively wrong, with any effect this contention may have on the outcome of that appeal; for authority that such contention remains open, see *Supermarkets Gen. Corp.* v. *Commissioner of Rev.*, 402 Mass. 679, 683 (1988); *Electronic Corp. of America* v. *Commissioner of Rev.*, 402 Mass. 672, 674-677 (1988).

2. To avoid the result of its failure to bring itself within the time requirements of § 37, DLF takes a far reach and suggests

it should be acquitted of its delinquency on a theory which can be stated thus: the corporate excise tax is a single tax (here DLF refers to some cases that have so characterized the excise); the culmination of the exaction of the single tax in the present case was the assessment against Dana on August 12, 1993; DLF's applications for abatement of July 27, 1995, were within two years of the culminating event and thus timely in respect to the whole tax, taking in the assessment against DLF of February 11, 1993.

(a) In our view and the board's, DLF's theory is quite artificial and unconvincing. DLF's applications for abatement were directed, not to a predicated single tax, or to a single tax in the form of a culminating August 1993 net income assessment against Dana, but rather, specifically, to the February 1993 net worth assessment against DLF itself. That these DLF abatement applications, which were late in respect to the assessment at which they were aimed and to which they were solely relevant, happened to be filed within two years of the August 1993 assessment against Dana, was fortuitous and irrelevant.

(b) The theory propounded by DLF does not connect with the statute or with its practical administration. The statute sees an abatement application as attacking the assessment by which the taxpayer claims to be aggrieved. In the present case it is the assessment on net worth. And, on the present record, as noted above in our narrative, we find the commissioner himself properly suggesting to the taxpayer DLF that if it meant to challenge the particular assessment it could proceed by abatement application against it. And see note 2, *infra.*

(c) As to the talk of "single" tax,[2] we should not (paraphrasing a remark of Justice Cardozo) make a fetish of that or any other word. For some analytic purposes, the word "single" may be conveniently descriptive. See, for example, *Springdale Finishing Co.* v. *Commonwealth*, 242 Mass. 37 (1922), where the excise of the time was being contrasted as a whole with a tax

---

[2]The adjective "single" does not appear in the statute itself, and the word "tax," as it appears in the statute, must be taken in a generic sense. (Section 37 applies across the board to numerous systems of tax, see G. L. c. 62C, §§ 1, 2, 37.) In the present case, there were in fact — to track the triggers of the statute — dual returns, assessments, payments, and applications for abatement.

on property or income. For other analytic purposes, the word "single" is inconvenient and tends even to be misleading. See *George S. Colton Elastic Web Co.* v. *United States*, 116 F.2d 202, 204 (1st Cir. 1940), where Magruder, J., says "our decision must turn upon the question whether, for income tax accounting purposes, the two factors comprising the Massachusetts domestic corporation tax should be regarded as a single, indivisible unit or as separate items," and espouses the latter view, recognizing that the *Springdale* characterization of "single" was "apparently directed to the question of constitutionality," a quite different question. In our present case, the board was at pains to elaborate on what can as well be called the dual features or measures or components of the corporate excise.

To illustrate: DLF and Dana file separate returns. DLF reports its taxable net worth, to which, as an "intangible property" corporation, it applies an "income apportionment percentage" to determine the part of the net worth to be allocated to Massachusetts. (See note 1, *supra*.) Dana reports for itself as to any of its taxable tangible property or net worth. Each of the affiliates calculates its taxable net income (generally its Federal gross income reduced to net), to which the apportionment percentage is applied as necessary. Dana reports for the group, combining the data. DLF and Dana are each alone responsible for the payment required of it on the net worth measure. The affiliates, however, are jointly and severally responsible for payment of the combined liability owing on the net income measure. DLF and Dana reporting on the net worth measure receive deficiency assessments, NIAs, NOAs, and other processing separately from Dana reporting for the group on the net income measure. So tax is hardly single in the administrative sense, the aspect naturally pertinent to the limitations statute.

A requirement that the taxpayer make timely response if it intends to question a given assessment is not unreasonable, and indeed contributes to convenience and regularity of tax administration. The commissioner's reading and application of the statute to that effect appear correct even apart from the respect owing to his judgment on a matter touching the day-to-day running of his office. See *Commissioner of Rev.* v. *McGraw-Hill, Inc.*, 383 Mass. 397, 400-401 (1981); *McCarthy* v.

*Commissioner of Rev.*, 391 Mass. 630, 632 (1984); *Koch* v. *Commissioner of Rev.*, 416 Mass. 540, 555 (1993); *A. W. Chesterton Co.* v. *Commissioner of Rev.*, 45 Mass. App. Ct. 702, 710 (1998).

The decision of the Appellate Tax Board is affirmed.

*So ordered.*