NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-790                                          Appeals Court
18-P-1468


RAYTHEON COMPANY  vs.  COMMISSIONER OF REVENUE.


Nos. 18-P-790 & 18-P-1468.

Suffolk.      June 3, 2019. - September 12, 2019.

Present:  Green, C.J., Vuono, & Lemire, JJ.


Taxation, Abatement, Corporate excise, Commissioner of Revenue,
     Appellate Tax Board: jurisdiction.  Administrative Law,
     Agency's interpretation of statute, Judicial review.
     Statute, Construction.  Notice, Timeliness.



     Appeals from decisions of the Appellate Tax Board.


     Donald-Bruce Abrams (John S. Brown also present) for the
taxpayer.
     Kirk G. Hanson, Assistant Attorney General, & Pierce O.
Cray, Assistant Attorney General, for Commissioner of Revenue.


     GREEN, C.J.  These two related appeals raise questions

concerning the timeliness and scope of applications for

abatement of excise taxes filed by the Raytheon Company for the

years 2007 and 2012, respectively.  In both cases, Raytheon

timely filed its return, but thereafter received notice of a

deficiency assessment from the Commissioner of Revenue (commissioner), and filed an application for abatement challenging the deficiency assessment. Raytheon timely appealed the commissioner's denials of the abatement applications, and, while the appeals were pending before the Appellate Tax Board (board), subsequent events revealed in each instance that Raytheon had in fact overpaid the taxes owed when it filed its original returns. Although the commissioner abated the deficiency assessments in full while the appeals to the board were still pending, Raytheon argued that it was due further abatements on the theories that (a) it had overstated its income for 2007, and (b) it was entitled to recoup at once (in the form of a tax refund) certain investment tax credits, rather than carrying forward any credits remaining after the full abatement of the 2012 deficiency assessment. After abating the deficiency assessments, the commissioner moved to dismiss Raytheon's appeals to the board, arguing that the appeals were untimely as to any matter other than the deficiency assessments. The board agreed and dismissed Raytheon's appeals for want of jurisdiction over any amounts other than the deficiency assessments. On appeal to this court, Raytheon contends that the board's dismissal was incorrect because the deficiency assessments necessarily encompassed not only the amounts stated in the notices of deficiency assessment but also the amounts by which

Raytheon had overpaid its taxes in its original returns.  In its appeal concerning its 2012 return, Raytheon makes an additional argument:  that its application for abatement, which referenced only the deficiency assessment for that return, was sufficient to preserve its rights to claim an abatement of taxes reported in its filed return because the application for abatement was filed within three years after Raytheon had filed its return.[1] See G. L. c. 62C, § 37.  We affirm the decisions of the board in both cases.

1.  Factual Background. a. 2007 return.  Raytheon filed a corporate excise tax return for the 2007 tax year, reporting an excise tax liability of $7,333,762.[2]  On November 15, 2011, following an audit, the commissioner issued a notice of assessment, notifying Raytheon that he had assessed it an

---

[1] Raytheon's application for abatement concerning its 2007 return was filed more than three years after it had filed its return, but less than two years after the deficiency assessment. Accordingly, Raytheon presses no claim that it filed a timely application for abatement of the tax reported in its 2007 return.

[2] The record does not reflect the date on which Raytheon filed its return.  However, Raytheon has not argued that its 2012 abatement application was timely as to its original 2007 tax return under any of the time limits in G. L. c. 62C, § 37. Nor did it argue (either to the commissioner, the board, or on appeal to this court) that the commissioner's November 2011 notice of assessment was untimely as to Raytheon's filing of its original 2007 tax return.

additional $650,752 of corporate excise tax, plus interest and penalties, for the 2007 tax year.[3]

On January 12, 2012, Raytheon filed an application for abatement of the deficiency assessment. Raytheon did not, however, file any application for abatement directed to its original 2007 tax return. The commissioner denied Raytheon's abatement application in full on July 31, 2013. On September 20, 2013, Raytheon filed with the board a timely appeal from the commissioner's denial.

In addition to challenging the nonincome measure of the excise upon which the $650,752 deficiency assessment for the 2007 tax year was based, Raytheon also raised for the first time in its appeal to the board a claim that it had overstated its sales factor in its original 2007 return, resulting in an overstatement of the income component of its corporate excise for that tax year on that return. As a result of the alleged sales factor overstatement in its 2007 tax return, Raytheon claimed it was entitled to an additional abatement of $5,746,575 for the 2007 tax year, to be refunded from the taxes paid when it originally filed its return.

---

[3] The deficiency assessment was attributable to the commissioner's inclusion, after audit, of certain property in Raytheon's tangible personal property base, resulting in an increase in the nonincome component of Raytheon's corporate excise.

On December 14, 2015, the commissioner filed a partial motion to dismiss, moving to dismiss so much of Raytheon's appeal to the board as sought an abatement of portions of the tax paid when it filed its 2007 return.  The commissioner agreed that Raytheon could use the sales factor adjustment argument as a new legal theory to dispute the commissioner's tangible property deficiency assessment of $650,752 for the 2007 tax year.  However, he argued that, because Raytheon had never applied for an abatement of the tax originally reported on the 2007 return, any challenge to the original self-assessment for 2007 was time barred.  After the board denied the commissioner's motion, the commissioner abated the deficiency assessment in full, and filed a second motion to dismiss what remained of Raytheon's appeal -- in other words, its request for abatement of portions of the tax it originally reported on, and paid with, its 2007 return.  On February 2, 2018, the board allowed the commissioner's motion to dismiss, and Raytheon appealed.

b.  2012 return.  Raytheon filed its 2012 corporate excise return on August 29, 2013, reporting a tax due of $8,574,471.  On July 25, 2016, the commissioner sent to Raytheon a notice of assessment for 2012 in the amount of $2,885,572, plus interest and penalties, based on the commissioner's denial of a research and development credit that Raytheon had claimed.  Raytheon applied for an abatement of the deficiency assessment on August

24, 2016. At thirty days after the deficiency assessment, Raytheon's abatement application was filed well within the two-year limit established by G. L. c. 62C, § 37, and also fell (by five days) within three years after the date it had filed the return.

The commissioner denied Raytheon's abatement application on February 24, 2017. Raytheon then timely appealed to the board from the commissioner's denial on March 24, 2017. On November 15, 2017, before any board action on Raytheon's abatement application, Raytheon and the commissioner reached a settlement regarding Raytheon's corporate excise liability for two previous years: 2008 and 2009. Two aspects of that settlement had a significant collateral effect on Raytheon's 2012 excise. First, the settlement altered the calculation of the 2012 research and development credit at issue in the commissioner's deficiency assessment, leading him to reduce that assessment from $2,885,572 to $119,929. Second, the settlement also resulted in $2,737,091 worth of investment tax credit (ITC) "carryforwards" from 2008 and 2009 available for certain uses in later tax years, including 2012. The commissioner applied $119,929 of those carryforwards to 2012 as a credit against the remaining balance of the deficiency assessment, thereby reducing that balance to zero. As a result, the commissioner abated the deficiency assessment in full on April 12, 2018. The next day,

he moved to dismiss for lack of jurisdiction Raytheon's appeal to the board from his earlier denial of the company's application to abate the deficiency assessment.

In response, Raytheon asserted that it should be allowed to apply the remaining $2,617,162 in unused ITC carryforwards to the tax it had paid with its 2012 return, and receive a refund in that amount. In furtherance of that claim, Raytheon filed an amended and restated petition in which it sought "to amend and restate in its entirety the petition that Raytheon previously filed . . . and to assert Raytheon's entitlement to an additional abatement and refund." After hearing, the board issued a decision with findings, dismissing Raytheon's appeal for lack of jurisdiction, based on the fact that the commissioner had abated in full the deficiency assessment that was the subject of Raytheon's abatement application, and the time for filing a new abatement application with the commissioner had long since passed. This appeal followed, and was paired for hearing with Raytheon's appeal from the board's decision concerning the 2007 return.

2. Statutory and regulatory background. Assessment of taxes is governed by G. L. c. 62C, § 26. Subparagraph (a) of that section reads as follows:

> "Taxes shall be deemed to be assessed at the amount shown as the tax due upon any return filed under the provisions of this chapter and on any amendment, correction or

supplement thereof, or at the amount properly due, whichever is less, and at the time when the return is filed or required to be filed, whichever occurs later."

Pursuant to Department of Revenue regulations, "The tax declared on the return filed by the taxpayer is a self-assessment of tax by the taxpayer."  830 Code Mass. Regs. § 62C.26.2(1)(a) (2017, eff. December 5, 2016).[4]  Once a self-assessment occurs, the amount of tax declared on a tax return generally "is accepted as the tax due from the taxpayer for the tax period indicated on the return unless the self-assessed amount is later adjusted, either by the Commissioner or by the taxpayer."  830 Code Mass. Regs. § 62C.26.2(1)(a).[5]  Except for adjustments to correct mathematical errors apparent on the face of the return, most adjustments the commissioner makes are "deficiency assessments" pursuant to G. L. c. 62C, § 26 (b) (1).[6]

---

[4] Although § 62C.26.2 was not in effect when Raytheon filed the tax returns now at issue, the statement is a general description of the commissioner's views.

[5] See note 4, supra.

[6] In pertinent part, G. L. c. 62C, § 26 (b) (1), as appearing in St. 2014, c. 165, § 100, provides:

"If the commissioner determines . . . that the full amount of any tax has not been assessed or is not considered to be assessed, the commissioner may, at any time within 3 years after the date the return was filed or the date it was required to be filed, whichever occurs later, assess the same with interest as provided in [G. L. c. 62C, § 32] . . . ."

Before making a deficiency assessment, the commissioner first must give the taxpayer notice of his intent to assess, unless a specific exception applies. After receiving notice of the intent to assess, the taxpayer has thirty days to confer with the commissioner regarding the intended assessment. See G. L. c. 62C, § 26 (b) (1); 830 Code Mass. Regs. § 62C.26.1(6)(a) (2004). After that thirty-day period, "the commissioner shall assess the amount of tax remaining due to the commonwealth, or any portion thereof, which the commissioner believes has not been assessed." G. L. c. 62C, § 26 (b) (1), as appearing in St. 2014, c. 165, § 100.[7]

If a taxpayer believes the commissioner erred in making a deficiency assessment or otherwise is aggrieved by the assessment of a tax, the taxpayer may seek review pursuant to G. L. c. 62C, § 37, which provides that "[a]ny person aggrieved by the assessment of a tax, other than a tax assessed under chapter 65 or 65A, may apply in writing to the commissioner" for an abatement of that tax.

---

We note that in 2014 (after the commissioner's 2011 deficiency assessment and before the 2016 deficiency assessment), § 26 was amended, substituting the word "considered" for the word "deemed." The alteration does not change our analysis.

[7] Section 26 (b) was amended after the commissioner's first deficiency assessment. See note 6, supra. The amendments to the portion of par. (b) quoted above were not substantive.

Strict time limits govern when a taxpayer may apply for an abatement. Specifically, unless the commissioner and taxpayer agree to extend the period for assessment pursuant to G. L. c. 62C, § 27, the taxpayer must apply for the tax abatement "(1) within 3 years from the date of filing of the return, taking into account [G. L. c. 62C, § 79 (a)]; (2) within 2 years from the date the tax was assessed or deemed to be assessed; or (3) within 1 year from the date that the tax was paid, whichever is later." G. L. c. 62C, § 37.[8] Furthermore, the commissioner's regulations provide that "[i]f more than three years have expired from the date of filing of the original return, taking into account . . . G. L. c. 62C, § 79 . . . (a), and an application for abatement is filed within two years of an assessment the Commissioner will grant an abatement up to the amount of that assessment." 830 Code Mass. Regs. § 62C.37.1(4) (2016, eff. November 30, 2015).[9] Additionally, if a taxpayer

---

[8] General Laws c. 62C, § 79 (a), provides that "[a]ny return filed before the last day prescribed for the filing thereof shall be considered as filed on such last day."

[9] At the time Raytheon submitted its application for an abatement of its 2007 deficiency assessment, the first phrase in the commissioner's regulations just quoted read as follows:

"If more than three years have expired from the due date of the return, determined without regard to any extension of time, and an application for abatement is filed within two years of an assessment the Commissioner will grant an abatement up to the amount of that assessment."

believes it has overreported the amount of tax due on its tax return, it may seek a refund of that overpayment either by filing an application for abatement of the overpayment, pursuant to G. L. c. 62C, § 36, or by filing an amended tax return that reduces the tax reported as due.  See 830 Code Mass. Regs. § 62C.26.2(1)(a).[10]  However, an amended return that reduces the tax reported as due still must be filed within the statute of limitations applicable to an abatement application under G. L. c. 62C, § 37.  See 830 Code Mass. Regs. § 62C.26.2(3)(a) (2017, eff. December 5, 2016).[11]  Where necessary to protect the

830 Code Mass. Regs. § 62C.37.1(4) (2006).  In the circumstances of this case, the 2016 amendment to the regulation, substituting the phrase "date of filing" for the phrase "due date," does not bear on the timeliness of Raytheon's abatement applications.

[10] Section 62C.26.2, titled "Amended Returns," was added to 830 Code Mass. Regs. effective December 5, 2016, after Raytheon had filed its August 2016 abatement application.  As to the regulations governing amended returns in effect when Raytheon filed its abatement applications, see 830 Code Mass. Regs. § 62C.37.1(5)(b) (2008, eff. Nov. 3, 2006) (taxpayer may file amended return or write letter to Department of Revenue calling to commissioner's attention the overpayment); 830 Code Mass. Regs. § 62C.37.1(1)(a) (2016, eff. Nov. 30, 2015) (as to business tax filers, amended return may not serve as vehicle for seeking abatement, except as specified by commissioner).

[11] Title 830 Code Mass. Regs. § 62C.26.2(3)(a) also provides that "an amended return that reduces the tax reported to be due is also subject to the statute of limitations under M.G.L. c. 62C, § 36," which provides various statutes of limitation applicable to applications for an abatement or refund of an overpayment of tax, depending on whether a return has or has not been timely filed.  Under § 36, when the return has been timely filed (as was the case here with Raytheon's 2007 tax return), the statute of limitations within which the taxpayer must seek a

taxpayer's statutory rights of appeal, the commissioner will deem an amended return that reduces a self-assessment to be an abatement application.  830 Code Mass. Regs. § 62C.26.2(5) (2017, eff. December 5, 2016).

3.  Discussion.  a.  Deficiency assessment.  Common to Raytheon's claims in both appeals is its contention that the respective deficiency assessments necessarily encompassed not only the amounts stated in the notices of deficiency assessment, but also the difference between the amount Raytheon self-reported on its return when originally filed and the amount "properly due," after taking into account all adjustments or credits that were or could have been applied -- and particularly including even those that did not become known until after the date on which Raytheon could have filed an application for abatement of the taxes due on that return.  Raytheon acknowledges that we considered and rejected a similar claim in RHI Holdings, Inc. v. Commissioner of Revenue, 51 Mass. App. Ct. 681, 686-687 (2001), but observes that the specific argument it now advances was not pressed by the taxpayer or addressed by

refund of an overpayment is the same as for abatements under § 37.  See G. L. c. 62C, § 36 ("A request for a refund or credit of an overpayment of tax where the required return was timely filed shall be made within the period permitted for abatement for that return under section 37").

this court in that opinion. We nonetheless are unpersuaded by Raytheon's argument.

We first review, in summary, the circumstances and analysis in the RHI Holdings case, as background for the present appeals. In RHI Holdings, the taxpayer filed an abatement application in 1988, within two years after the date of a 1986 deficiency assessment, but more than three years after filing its original tax returns in 1982 and 1984. RHI Holdings, 51 Mass. App. Ct. at 682-683. RHI sought to amend its abatement application so as to recompute the combined net income it had reported in its original tax returns, in the wake of an intervening decision of the Supreme Judicial Court in a different matter that rejected the commissioner's previously prescribed method for apportioning combined net income of multistate entities. Id. at 683. The commissioner allowed the recalculation but only up to the amount of the deficiency assessment because RHI's abatement application was untimely as to the self-assessments that occurred when the original returns were filed. Id. The board upheld the commissioner's decision, and this court affirmed, holding that because the abatement application was filed nearly four years after the "deemed assessment" that occurred when the tax return was filed in 1984, RHI's abatement application was untimely as to both the 1982 and 1984 "deemed assessments" and timely only as to the subsequent deficiency assessment. Id. at 686. We

rejected the taxpayer's assertion that the term "assessment," as used in G. L. c. 62C, § 37, "necessarily means 'the full amount of any tax due, including any tax deemed to be assessed on the return plus any subsequent additional tax due on audit,'" concluding that such a construction "would render much of the language of § 37 meaningless or surplusage." Id. at 686-687, 689. Instead, in order to challenge the assessment of any particular tax, the taxpayer must file a timely abatement application as to each unique act of assessment. Id. at 689.

Much of the analysis in RHI Holdings applies with equal force to the present case. However, Raytheon now contends that the discussion in RHI Holdings overlooked a critical element, by treating the "deemed assessment" in the originally-filed tax return as equal to the amount self-reported on the return originally filed by the taxpayer. Instead, Raytheon asserts, G. L. c. 62C, § 26 (a), directs that the "deemed assessment" is "the amount shown as the tax due upon any return filed . . . or . . . the amount properly due, whichever is less" (emphasis added). Accordingly, Raytheon insists, the amount self-reported with the return is the "deemed assessment" only if it is the amount "properly due," and in circumstances (such as those in the present case) where the self-reported amount reflects an overpayment (albeit unknown as such until long after the return was filed), the "deemed assessment" is the lower amount

"properly due," after exclusion of the overpayment. Since the only taxes ever assessed before the notice of deficiency assessment were those deemed assessed at the lower amount, the argument continues, any subsequent deficiency assessment must be for the difference between the amount "deemed assessed" (and "properly due") with the original return and the total amount shown as unpaid in the notice of deficiency assessment, regardless of the amount of the deficiency described in the notice of assessment itself. From that premise, Raytheon concludes that its application for abatement, directed to the deficiency assessment, encompassed both the amount stated in the notice of assessment and the amount it overpaid with its originally filed return.

We reject the foundational suggestion in Raytheon's argument that the amount of the "deemed assessment" when a taxpayer files a return with self-reported income is open to redetermination after the statutorily prescribed time limit for the taxpayer to seek an adjustment of its tax liability, and that the amount of the assessment imposed by a notice of deficiency assessment is other than the amount set forth in the notice. To be sure, a taxpayer may seek abatement of taxes assessed and paid with its initial return, including the amount of any overpayment, or may seek to amend its return, and, if allowed, any such abatement or amendment will redetermine the

amount of the deemed assessment established by the filed return. But the time for such a request or amendment is strictly limited in time by G. L. c. 62C, § 37, to three years after the date on which the return is filed. Unless and until such an abatement is made, the taxes deemed assessed by the filing of the return are simply those reported on, and paid with, the return. And once the time for seeking an abatement of those self-reported taxes has passed, the reported amount may not thereafter be adjusted. We also conclude, consistent with our holding in RHI Holdings, that an application for abatement filed with reference to a deficiency assessment initiates a request for abatement only of the amount stated in, and therefore imposed by, that assessment.

Our conclusions are consistent with familiar canons of statutory construction. As we summarized in RHI Holdings, 51 Mass. App. Ct. at 685-686:

> "'The board is an agency charged with the administration of tax law to whose interpretation of tax statutes we may give weight.' A.W. Chesterton Co. v. Commissioner of Rev., 45 Mass. App. Ct. 702, 710 (1998). See, e.g., McCarthy v. Commissioner of Rev., 391 Mass. 630, 632 (1984). Further, '[w]herever possible, we give meaning to each word in the legislation [at issue]; no word in a statute should be considered superfluous.' International Org. of Masters, Mates & Pilots v. Woods Hole, Martha's Vineyard & Nantucket S.S. Authy., 392 Mass. 811, 813 (1984). See Chatham Corp. v. State Tax Commn., 362 Mass. 216, 219 (1972) (every word in a legislative enactment, including a tax statute, is to be given force and effect). Also, however, it 'is a familiar principle that tax laws are to be strictly construed,' McCarthy v. Commissioner of Rev., supra at 632;

and, to 'whatever extent the statute is ambiguous, we construe it in favor of the taxpayer.' Electronics Corp. of America v. Commissioner of Rev., 402 Mass. 672, 675 (1988)."

Raytheon's proposed construction of the amount "deemed assessed" with a taxpayer's self-reported return would significantly undermine § 37's imposition of limitation periods, in much the same way as we observed the taxpayer's argument would have done in RHI Holdings.  See 51 Mass. App. Ct. at 689. And, contrary to Raytheon's contention, its proposed construction is not required to lend meaning to the portion of G. L. c. 62C, § 26, setting the deemed assessment at the amount "properly due," if lower than the amount reported with the return; a timely application for abatement, or a timely amended return, resulting in a lower tax due, would correspondingly adjust the deemed assessment to the lower amount.  Moreover, limiting the abatement available in an application directed to a deficiency assessment to the amount of the deficiency assessment is consistent with the express provisions of the commissioner's regulations, which provide that

> "[i]f more than three years have expired from the date of filing of the original return, taking into account . . . G. L. c. 62C, § 79 . . . (a), and an application for abatement is filed within two years of an assessment the Commissioner will grant an abatement up to the amount of that assessment" (emphasis supplied).

830 Code Mass. Regs. § 62C.37.1(4).[12]

For the foregoing reasons, the deficiency assessments on Raytheon's 2007 and 2012 returns assessed only the amounts stated in the notices of those assessments, and did not operate to impose a new assessment of any amount overpaid with the 2007 and 2012 returns. Accordingly, Raytheon's applications for abatement of the deficiency assessments on its 2007 and 2012 returns were effective only to abate any amounts imposed by the notices of those assessments, and the board properly declined jurisdiction over Raytheon's claims concerning other amounts.

b. 2012 return. Raytheon's application for abatement of the deficiency assessment on its 2012 return was filed within three years after its 2012 return. As we explained in our discussion of background facts, although the application made no mention of any request to abate the taxes reported on Raytheon's 2012 return, subsequent events furnished Raytheon with significant ITC carryforwards for application in later years, and Raytheon thereafter sought to amend its application for

---

[12] Earlier versions of the regulation were cited with approval in RHI Holdings, 51 Mass. App. Ct. at 688, and in Electronics Corp. of Am., 402 Mass. at 677. In Electronics Corp., the court cited the regulation as a safeguard against the "unintended or absurd result" by which a taxpayer could use a timely application for abatement following payment of additional taxes to seek abatement not only of the additional taxes paid, but also of taxes previously paid, after the time for seeking abatement of the previously paid taxes had expired. Id.

abatement of the deficiency assessment to seek abatement of the taxes originally paid with the return, through application of those carryforwards. Raytheon's separate argument regarding its 2012 return asserts that its application for abatement of the deficiency assessment was sufficient to preserve its rights to claim an abatement of other taxes paid with its original 2012 return because the application was filed within three years after Raytheon had filed its return.

We consider Raytheon's argument foreclosed by the Supreme Judicial Court's observation in Liberty Life Assur. Co. v. State Tax Comm'n, 374 Mass. 25, 28 (1977), that "[i]in a hearing before the board, an appellant may advance legal theories and present facts not relied on before the commission, but the appellant may not present a request for abatement of a portion of an excise not involved in any respect in its application to the commission." Accordingly, as the commissioner argues in his brief, it is immaterial for purposes of the present appeal that, at the time it applied for abatement of the 2016 deficiency assessment, Raytheon could have submitted a timely application for abatement of the taxes it reported and paid with its 2012 return, because it did not do so; the only application for abatement was directed to the 2016 deficiency assessment.

Electronics Corp. of Am., 402 Mass. at 674-677, and Supermarkets Gen. Corp. v. Commissioner of Revenue, 402 Mass.

679, 682-685 (1988), are not to the contrary.  Both cases confirm the proposition that a taxpayer may take advantage of any of the limitations periods applicable to the taxpayer's circumstances, but neither suggests that an application for abatement of taxes imposed by a specific assessment may operate to request abatement of a different assessment.

Finally, we reject Raytheon's suggestion that the commissioner was obliged to accept its request to amend and restate its application for abatement of the 2016 deficiency assessment to include an application for abatement of the taxes reported and paid with its 2012 return, after expiration of the limitations period applicable to the latter, under 831 Code Mass. Regs. § 1.14 (2007), with "relation back" to the date it filed its application for abatement of the deficiency assessment.[13]  As a threshold matter, the question of leave to amend is subject to the discretion of the commissioner, and Raytheon made no motion for leave to amend and has advanced no compelling rationale in this appeal to support a conclusion that denial of such a motion would be an abuse of discretion.  In any event, Raytheon cites no authority to support its contention

---

[13] In pertinent part, 831 Code Mass. Regs. § 1.14 provides:

"Parties may amend their pleadings at any time before the decision of the Board, by consent of the adverse party or by leave of the Board."

that an amendment to an application for abatement of one assessment may be used as a vehicle, with "relation back," to raise a claim, which otherwise would be time barred, for abatement of a different assessment.  Cf. Sears, Roebuck & Co. v. State Tax Comm'n, 370 Mass. 127, 129-130 (1976) (appeals to board under G. L. c. 64F, § 23, and G. L. c. 64H, § 22, as then in effect; see now G. L. c. 62C, § 39).[14]

The decisions of the appellate tax board are affirmed.

So ordered.

---

[14] Similarly unavailing is Raytheon's suggestion that the board should have considered its time-barred request for abatement of the taxes paid with its 2012 return as a matter of "equity and good conscience."  G. L. c. 58A, § 7.  Whatever such considerations might encompass, they do not overcome statutorily established jurisdictional limits.  See Veolia Energy Boston, Inc. v. Assessors of Boston, 95 Mass. App. Ct. 26, 29 (2019).